## CHARLES M. CHADWICK
*v.*
## JOHN PARKER.

1. LEASE—*forfeiture—re-entry.* At common law, a lease containing a condition for a re-entry for non-payment of rent, the law not favoring forfeitures, required of the landlord, before he could re-enter, that he should demand the precise amount due; that it be made the day it fell due; to be made at a convenient hour before sunset; on the land at the most conspicuous place, unless a different place is named in the lease, then, at that place; the demand

must be made in fact, and, to be availing, had to be pleaded and proved. The tenant had the whole day in which to make payment, but, failing to do so, the reversioner might then re-enter.

2. SAME. As leases of every kind frequently contain these conditions, in favor of trade and agriculture, and as forfeitures are odious to the law, such forfeitures are never enforced but upon a strict compliance with all the requirements of the law. All leases having such conditions are, without reference to the length or value of the term, attended with the same consequences, and are liable to be swept away, if the rent is not paid on the day it falls due, notwithstanding it may owe almost its entire value to the expenditure of the labor and money of the tenant. It is only reasonable that the landlord should, on the day his rent falls due, indicate his intention of terminating the lease, and the tenant have the entire day within which to make payment.

3. FORFEITURE — *after changed by statute.* The act of 4 George II, chapter 28, section 2, amended the common law, only requiring the landlord, if a sufficient distress could not be found, to sue in ejectment, and, if a recovery be had, and execution be had, without the tenant paying the rent, and failing to file his bill in six months, the term was ended, unless the judgment should be reversed.

4. SAME — *construction of the act.* The British courts, in construing this act, held that it gave an additional remedy to the landlord ; that he might proceed under the statute, or resort to the common law, as he might prefer, but, in adopting either course, he must conform to the law regulating that mode of terminating the lease.

5. LEASES — *regulated by statute.* The act of 1865 declares that in all cases of tenancies, when default shall be made in the payment of rent due, or in any of the covenants of the lease, it shall not be necessary to give more than ten days' notice to quit, or of the termination of such tenancy ; and it may be terminated on giving such notice to quit at any time after default in any of the covenants of the lease. That no other notice or demand shall be necessary. It also declares, that, in all cases of a lease or contract, when all of its covenants are performed, the lease or contract shall be notice of its termination, and no other notice be required.

6. SAME. The second section of the act of 1865, designed to dispense with the necessity of demanding the rent on the very day it falls due or the breach of covenant occurs, and to extend the right when the lease contains no clause for a re-entry ; and it contemplates a notice to quit, and one of the landlord's intention to terminate the lease. While it does not in terms require ten days' notice of an intention to terminate a lease, it declares that more than that need not be given, and thereby renders ten days' notice before the lease terminates sufficient.

7. SAME — *payment of rent — notice.* It was the intention of the legislature to give the tenant ten days' notice, within which he might pay the arrears of rent, and thus prevent a forfeiture. It could not have been the legislative

intention to bring even future leases under so rigid a rule as to permit a land-lord to declare an instant forfeiture of a lease, because the rent was not paid on the day it falls due, although payment may have been prevented by accident or uncontrollable necessity, but rather to give a reasonable opportunity to avoid such disastrous consequences.

8. RENT—*failure to pay after demanded.* When ten days expires after the notice and demand without the payment of the rent in arrear, the tenancy is terminated, and the landlord may sue and recover possession.

9. EVIDENCE—*readiness to pay rent.* In such a case it is not error to reject evidence that the tenant offered to pay part and was ready on the premises to pay the balance when it became due, as he had the opportunity of paying when the demand was made and the notice given, and for ten days after.

APPEAL from the Superior Court of Chicago; the Hon. JOHN M. WILSON, Chief Justice, presiding.

This was an action of forcible detainer, brought by John Parker, before a justice of the peace of Cook county, against Charles M. Chadwick, to recover the possession of a house and lot in the city of Chicago. On the 2d of April, 1866, a trial was had, resulting in a judgment in favor of defendant. The case was removed by appeal to the Superior Court of Chicago.

On the 15th day of June, 1866, the case was tried before the judge and a jury. It appears that appellant leased of appellee the premises in controversy, and entered into their possession and occupancy. Having failed in the payment of several installments of the rent, appellee gave to appellant this notice:

" To CHARLES M. CHADWICK:

" You are hereby notified, that, in consequence of your default in the payment of rent according to the terms, conditions and covenants of a certain lease, bearing date March 7, 1865, made and executed by me to you, and by you subscribed, of the premises known as 115 and 117 Dearborn street, Chicago, now occupied by you, said rent being due and unpaid on the fifth day of August, the fifth day of September, the fifth day of October, the fifth day of November, the fifth day of December, 1865, and on the fifth day of January, the fifth day of February, and the fifth day of March, 1866, I have elected to

determine said lease, and you are hereby notified to quit and deliver up possession of said premises to me, within ten days from this date.

    "March 14, 1866.               JOHN PARKER."

It appeared that the payments named in the notice were in arrear and unpaid. There was no evidence of a payment or tender of the rent due on the lease within ten days after this notice was served, and the demand of payment was made.

On the trial, appellant offered to prove that he had offered to pay the rent on the several days it fell due for the first five months, and for the balance of the time he was ready on the several days the rent fell due, on the premises, with the money to pay the rent. This was objected to, and the objection sustained by the court, and appellant excepted. He also offered to prove that he had tendered the money falling due in August, September, October and November, which was rejected, on objection by appellee.

The jury returned a verdict of guilty. A motion for a new trial was entered by appellant, and overruled by the court, and a judgment was rendered on the verdict.

Messrs. McALLISTER, JEWETT & JACKSON, for the appellant.

Mr. GEORGE H. BELLOWS, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of forcible detainer, brought before a justice of the peace, for the recovery of the possession of a house in Chicago; it was tried before him, and removed by appeal to the Superior Court; and an appeal is prosecuted to this court, from the judgment rendered on the trial in that court. It appears, that the lease was for a term of five years, commencing on the 5th day of July, 1865, and ending on the corresponding day of July, 1870, at a rent of $541.66⅔, monthly, in advance. The lease, among others, contained this covenant: "It is expressly understood and agreed by and between the parties

aforesaid, that, if the rent above reserved, or any part thereof, shall be behind or unpaid on the day of payment thereon, the same ought to be paid as aforesaid; or, if default shall be made in any of the covenants or agreements herein contained, to be kept by the said party of the second part, his executors, administrators or assigns, it shall and may be lawful for the said party of the first part, his heirs, executors, administrators, agent, attorney or assigns, at his or their election, to declare said term ended, and into the said premises, or any part thereof, either with or without process of law, to re-enter." It appears, that appellant executed notes to appellee for each month's rent falling due the first year, and bound himself, on the first day of June of each year, during the continuance of the lease, to give similar notes for the rent falling due each month of the succeeding year. On the back of each there was an indorsement, that they were given as collateral security for the rent of premises, as by a lease between the parties, of even date, and subject to all matters of defense, the same as the covenants in the lease, and shall be notice to the holder. On the 14th day of March, 1866, appellee made a demand on the premises, for rent due on the 5th day of August, and each intervening month, of appellant. It was not paid, and appellee gave him a notice that the lease was determined, and subsequently brought this suit to recover possession of the premises.

It is conceded, that the demand of the rent and the notice of the termination of the lease occurred about three o'clock in the afternoon of that day. It is contended, that the demand of rent should have been on a day previous to the day on which the notice of the termination of the lease was given; that appellant had the whole day on which the demand of rent was made to pay it, and that the two acts could not be simultaneous. There was no place named in the lease where the money should be paid.

At the common law, where a lease contained a condition for re-entry for non-payment of rent, the law, not favoring forfeitures, required several things to be done by the lessor to entitle him to re-enter. It required a demand of the precise amount of the

rent due, neither more nor less; that it be made upon precisely the day when due and payable by the terms of lease, or if a further day was specified within which it might be paid to save the forfeiture, then upon the last day of that time. It was required to be made at a convenient hour before sunset; upon the land, at the most conspicuous place; as, if it was a dwelling-house, at the front door, unless some other place was named in the lease, when it was necessary to make it at that place. It was required that a demand should be made in fact, should be pleaded and proved, to be availing. The tenant, however, had the entire day within which to make payment. But, if he failed to do so, then the reversioner was entitled to re-enter. 1 Saund. 287, note 16; *Foster* v. *Wandless*, 7 T. R. 117; *Chapman* v. *Wright*, 20 Ill. 120. If any of these requirements were not observed, the lessor could not declare a forfeiture and re-enter the premises.

This strictness is supposed to be necessary to protect the interests of agriculture and trade; and, because at law forfeitures are odious, and are never enforced except in strict conformity to all of the requirements of the law; leases of every description frequently contain these conditions. They are not unfrequently inserted in leases for life, for years, and other terms. If contained in the longest as well as in the shortest terms, a failure to pay rent on the day would, it is believed, be attended with the same consequences. A lease for ninety-nine years, containing such a provision, and upon which the most valuable and permanent improvements have been made by the lessee, and the greater portion of the term unexpired, is liable to be swept away if the rent is not paid on the day it falls due, and this notwithstanding the term may have become of great value, by the improvements placed upon the premises.

Long leases of farms, of business houses, and of manufacturing privileges are frequent, where it is intended that all of the improvements shall be placed upon the premises by the lessee, which is well calculated to advance these great interests. And if they may be forfeited because a tenant shall neglect a few hours, or if from sickness or uncontrollable necessity he is pre-

vented from making payment at the precise time agreed upon, he shall forfeit his lease, without any notice or act done on the part of the landlord, great wrong and injury would result. Can it be said, that, because the landlord has been disappointed, for but a day, it may be, in getting his rent, a long, highly improved and valuable lease, made so by the labor and expenditure of the tenant, shall be forfeited to compensate for the want of the use of his rent for so short a period? Is it not more reasonable, just and in harmony with the interests of society, that the landlord should be required at the time to indicate his option, whether he would terminate or continue the lease, and at least give the tenant an opportunity of making the payment at any time during the day the demand was made, and thus prevent such disastrous results? Although inconvenient, these old requirements of the common law are not devoid of justice.

Again, they were well calculated to prevent the necessity of a resort to equity, in many cases, to avoid the forfeiture. In this manner, the law proceeds to a large extent upon equitable principles; and, although the relief afforded may not have been as ample as in a court of equity, still justice was more cheaply and expeditiously administered. But the developments of trade, with its vast interests, demanding changes in all departments of business, to facilitate its operations, and to conform to the different habits which had been wrought in the community, induced the British parliament to amend the law by the act of 4 George II, chapter 28, section 2, which declared, that when a half year's rent should be in arrear, and the landlord had a right of re-entry for the non-payment thereof, the lessor might, without any formal demand or re-entry, serve a declaration in ejectment for the demised premises; and should a recovery be had by the landlord, and execution be had, without the tenant paying the rent in arrears, with the costs, or he should not file his bill within six calendar months after such judgment shall be executed, then the lessee, his assignees and all others should be barred in law or equity, without first reversing the judgment, from claiming the same; and the land-

lord should thenceforth hold the premises, discharged from the lease. The act provided, that to recover, the landlord must prove that there was a right of re-entry given by the lease, that a half year's rent was due before the declaration was served, and that no sufficient distress was found on the demised premises, "countervailing the arrears then due." Thus, it appears, that parliament were not unmindful of the important interests with which they were dealing, as they have studiously guarded the rights of the lessee, while changing the remedy of the lessor.

In giving a construction to this act, the court of King's Bench, in the case of *Foster* v. *Wandless*, held, that the statute was adopted to do away with the niceties of the common law. That it showed, however, that these niceties were required, and that they must have been complied with before the passage of the act; and that it did not apply to a case where there was a sufficient distress on the premises. That in such a case, the landlord must resort to his right at common law, and failing to comply with the common law, he could not recover. From this it appears, that that act was in aid of the common law, and was not intended to repeal it, but to afford an additional remedy. But failing to bring himself fully within the provisions of the act, the lessor could not regain possession, unless he showed that he had complied with all of the requirements of the common law ; that he might proceed under either, but must bring himself fully within one or the other to succeed.

Our general assembly, at the session of 1865 (Sess. Laws, 107), introduced important changes in this branch of the law. The second section declares, that in all cases of tenancies where default shall be made in the payment of rent due, or in any of the covenants of a lease, it shall not be necessary to give more than ten days' notice to quit, or of the termination of such tenancy; and that the same may be terminated on giving such notice to quit at any time after such default in any of the covenants of such lease. The form of the notice is prescribed. It also declares, that no other notice or demand of possession, or termination of the tenancy shall be necessary. The third sec-

tion· prescribes the mode of serving the notice and the return. The seventh section declares, that in all cases of a lease or contract, where all of its covenants are fulfilled, the lease or contract shall be sufficient notice of its termination, and no other notice shall be necessary.

The second section was obviously designed to dispense with the necessity of making the common law demand of the rent on the very day it fell due, and to give a remedy where the lease contains no clause for a re-entry. This section seems to contemplate two notices, — one to quit, and the other of the landlord's intention to declare and insist upon a forfeiture, — or why declare that it should not be necessary to give· more than ten days' notice of the termination of the lease? While it does not, in terms, require ten days' notice to be given to terminate a lease, it declares, that it shall not be necessary to give more than ten days' notice of such termination. If the intention was to only require notice to quit before bringing suit, why embrace a notice of the termination of the lease? If the default of itself worked a forfeiture, then the lease was ended, and no other act could be required. But, as it is at the option of the landlord to continue or terminate the lease after a default has occurred, and as this act dispenses with the necessity of demanding payment on the day, and authorizes a forfeiture subsequently to be declared, we must suppose that the general assembly intended to give the lessee some benefit by the notice of the termination of the lease, and we can see none by informing him that it ended on the day he should have paid the rent which was in arrear.

If, however, it was intended, that, after a default in paying the rent, the landlord might give ten days' notice that if the rent was not paid the lease would then be terminated, we can see that there would be some mutuality, — that tenants having long and valuable leases could have that period within which to pay the money and prevent a forfeiture; and such was, no doubt, what was intended.

It is believed, that, as a matter of fact, vast interests in leasehold property exist in this country, — that millions depend

upon them; and it could not have been the intention of the legislature to even bring future leases under such rigid rules, as to subject every lease in the State, whether it is held for agricultural, commercial, or manufacturing purposes, under a rule that the failure to pay on a specified day should, without further notice or opportunity of payment, of itself, end the lease, independent of all agreement of the parties, to say nothing of those already made. Such a construction would render, in a large number of cases, such a breach of contract more highly penal than the commission of any misdemeanor defined in our Criminal Code. In many instances it would involve the loss of thousands of dollars, and would of itself entail ruin upon the unfortunate tenant, who, from sickness or unavoidable necessity, should be prevented from making payment at the time. Such consequences, we believe, have never been visited upon unfortunate tenants in any country.

The act makes no exception and has no saving clause in favor of any class of leases, or for misfortune or accident. Such could never have been intended by the legislature; and we cannot so hold, until they speak in language so plain that it cannot be misunderstood. But having provided for ten days' notice of the termination of the lease, if the landlord shall rely upon the statute he should bring himself within its provisions. If his lease contains a clause of re-entry, he can, if he choose, resort to his common law remedy, or failing in that, he may, after default, give notice that unless the arrears are paid within ten days his lease will terminate, and that he must quit the possession of the premises, on the notice provided by the statute, and on the failure of the tenant to pay such arrears, he may, after the expiration of the time, bring his suit without further notice. If the lease contains no such clause, then the landlord may, after default in payment, give a similar notice, and with like effect. This was no doubt what was intended by the legislature, as it brings within its provisions a large class of cases, not embraced in the common law; and affords a remedy in such cases, not previously possessed, of terminating a lease and regaining possession, where an insolvent

tenant would not pay his rent, instead of leaving the landlord, as he was before, to his action for the recovery of his rent.

In this case more than ten days elapsed after the notice was given, and the suit was brought, and the appellant should, to prevent a forfeiture, have tendered the rent in arrear before the expiration of ten days from the time the notice was served. We have seen that the statute gave him this right; but, failing to pay, his lease became forfeited, and appellee had a right to maintain his action.

Appellant offered to prove, that he had tendered the rent for several months, and was ready and willing to pay the balance on the premises when it fell due. This evidence was rejected by the court. We do not under our statute see, that it was the duty of the landlord to call upon the tenant for the money at the premises, unless he intended to declare a forfeiture under the common law. But, even if he was bound to demand payment then, still he should have been ready, and paid it when it was demanded, on the 14th of March. He did not pay it on that day, nor within the succeeding ten days, and we are clearly of the opinion that it was not error to reject this evidence.

We do not perceive any error in this record, and the judgment must be affirmed.

*Judgment affirmed.*