## CHARLES D. CHAPMAN *et al.*

### *v.*

### JAMES KIRBY.

1. LEASE—*forfeiture—at common law—for non-payment of rent.* The right of forfeiture for non-payment of rent, being a harsh remedy, has never been favored by the law, and where a lease provides for such forfeiture, the landlord is required, at common law, before he can declare a forfeiture, to make a demand for the rent on the day it falls due, for the precise amount, and at a convenient hour before sunset, at the place specified in the lease, or on the premises if no place is named. Such demand must be made in fact, although no person be present.

2. SAME—*what will not be deemed a valid declaration of a forfeiture—so as to terminate a lease.* P leased to K a portion of certain premises, together with a specified quantity of steam power, at a stipulated rent, payable on the first day of each month, from May 1st, 1864, to January 1st, 1869. The steam power thereby leased was to be communicated from lessor's engine, through a shaft to K's machinery. The lease provided for a forfeiture for non-payment of rent. K failed to pay the rent due on the 1st day of May, 1867, and the lessor, on the 7th day of that month, caused to be served upon K, a written notice, notifying him that, by reason of such default, he had elected to terminate the lease at the expiration of ten days thereafter. The person serving such notice was instructed, by the lessor, not to receive the rent, if K should offer to pay it,

which he did offer to do within the ten days after the service of the notice, and it was refused. On the 1st of June following, the lessor severed the connecting shaft, whereby K was supplied with the steam power, and his machinery stopped. In an action by K against the lessor, to recover the damages sustained by reason of such act: *Held*, that there was no valid declaration of a forfeiture by the landlord, so as to terminate the lease and authorize a re-entry; that K's offer to pay the rent within ten days, and the lessor's refusal to receive it, were tantamount to payment, and saved the lease from a forfeiture.

3. SAME—*payment of rent made within the ten days after notice—lease saved from forfeiture.* In giving construction to the act of 1865, this court has said, that if the tenant pays the rent in arrears within the ten days after service of the notice, a forfeiture of the lease is thereby prevented. *Chadwick* v. *Parker*, 44 Ill. 326.

4. SAME—*mere non-payment of rent—will not authorize the landlord to enter and forcibly expel the tenant or remove tenements or appurtenances.* Under such lease, K acquired the same right to the use of the steam power that he did to occupy the premises, and his failure to pay the rent no more authorized the landlord to cut off such power than it did to enter upon the premises, and forcibly dispossess the tenant thereof. Mere non-payment of rent does not authorize the landlord to enter upon and forcibly expel the tenant, or to remove the tenements or their appurtenances, or any part of them.

5. DAMAGES—*measure of—for destruction of business—in consequence of cutting off the steam power.* And in such case, where the evidence showed, that in consequence of the act of the landlord, in cutting off the steam power, the lease was rendered valueless, and the stock in trade and machinery of the tenant became depreciated, and his business destroyed: *Held*, that these were all proper elements for the consideration of the jury in ascertaining the measure of damages.

6. SAME—*concerning the profits.* And in estimating the losses sustained, by reason of the destruction of plaintiff's business, it is proper for the jury to take into consideration the extent of plaintiff's business, and his profits for a reasonable period next preceeding the time when the injury was inflicted, leaving the defendant to show, that by depression in trade, or from other causes, the profits would have been less.

7. SAME—*in trespass.* In all actions of tort, the measure of damages is not less than the amount of injury sustained, and in case, all of the consequential damages sustained, connected with, or flowing from the act complained of.

8. SAME—*must be real.* But the damages must be the necessary and natural result of the act, and must be real, and not speculative or probable.

9. LEASE—*after unlawful entry—tenant had a right to dispose of his property.* After the landlord had cut off the power from the tenant's machinery, the

tenant had a right to presume that such power would not be restored, and was under no obligation to hold his machinery and stock undisposed of until the end of his term, but could dispose of his lease, stock and machinery, on the best terms he could obtain, and the landlord would be liable for any loss thereby sustained.

10. DAMAGES—*what may be recovered—for an unlawful re-entry*. And in such case, the party injured is entitled to recover damages for all the injury he has sustained, which was the necessary and natural consequence of the wrongful act.

11. FORMER DECISIONS. The cases of *Green* v. *Williams*, 45 Ill. 206, and *Cilley* v. *Hawkins*, 48 Ill. 308, are not in conflict with the doctrine expressed in this case.

12. DAMAGES. Nor, in such case, can the plaintiff be confined, in estimating his damages, to the value of the lease during the period from the time the power was withheld until it was connected with the machinery, some five months afterwards. Having been deprived of the power, and his business thereby destroyed, he had a right to presume that it would not be restored, and to sell out his effects, and after such sale he was under no obligation to re-establish his business.

APPEAL from the Superior Court of Chicago.

The opinion fully states the case.

Messrs. DENT & BLACK, for the appellants.

Messrs. SPAFFORD & McDAID, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears, from the evidence in this case, that Pomeroy Brothers, on the 1st day of May, 1864, were the owners of a planing mill and premises in the city of Chicago, and by a deed duly executed, leased to appellee a portion of the premises and a quantity of steam power, which was specified, from the 1st day of May, 1864, until the 1st day of January, 1869, at a specified rent. Lessors reserved the right to stop for reasonable repairs when required, but such repairs to be made with the least possible delay; lessors covenanted for the use

214            CHAPMAN *et al. v.* KIRBY.            [Sept. T.,

Opinion of the Court.

and enjoyment of the premises and power during the term, and appellee covenanted, on his part, as follows:

" *It is expressly understood and agreed,* by and between the parties aforesaid, that if the rent above reserved, or any part thereof, shall be behind or unpaid on the day of payment whereon the same ought to be paid, as aforesaid, or if default shall be made in any of the covenants or agreements herein contained, to be kept by the said party of the second part, his executors, administrators and assigns, it shall and may be lawful for the said parties of the first part, their heirs, executors, administrators, agent, attorney or assigns, at their election, to declare said term ended, and into the said premises, or any part thereof, either with or without process of law, to re-enter, and the said party of the second part, or any other person or persons occupying in or upon the same, to expel, remove and put out, using such force as may be necessary in so doing, and the said premises again to re-possess and enjoy, as in their first and former estate.    *    *    *    *    And if at any time said term shall be ended at such election of said parties of the first part, their heirs, executors, administrators and assigns, as aforesaid, or in any other way, the said party of the second part, his executors, administrators and assigns, do hereby covenant and agree to surrender and deliver up said above described premises and property, peaceably, to said parties of the first part, their heirs, executors, administrators and assigns, immediately upon the determination of said term as aforesaid, and if he shall remain in possession of the same ten days after notice of such default, or after the termination of this lease, in any of the ways above named, he shall be deemed guilty of a forcible detainer of said premises, under the statute, and shall be subject to all the conditions and provisions above named, and to eviction and removal, forcibly or otherwise, with or without process of law, as above stated."

It appears that Pomeroy Brothers assigned their lease to A. C. Hesing, and he to appellant, Chapman. Appellee paid rent to Pomeroy Brothers until they assigned their lease, and afterwards to Chapman. But after the 1st of April, 1867, no rent was paid, but it seems to have been tendered after the notice of the 7th of May was served on appellee notifying him that appellant elected to terminate the lease after the expiration of ten days, for the previous failure to pay rent on the 1st of May. On the 1st of June, 1867, Chapman severed the connecting shaft, just outside of the portion of the premises held by appellee, which connected with the engine and supplied appellee with power, and thus stopped his machinery. And for this act, on the part of Chapman, appellee brought an action on the case, to recover for the damages he claims to have sustained, and on a second trial in the court below the jury found a verdict for five thousand dollars in favor of appellee. A motion for a new trial was entered, which the court overruled and rendered a judgment on the verdict, and the case is brought to this court on appeal, and a reversal is asked upon several grounds.

It is claimed that appellants had the right to enter, as soon as appellee failed to perform his covenants, and that when they gave notice in May that they would terminate the lease because the rent was not paid, they did all that was required of them before they broke the connection and stopped the power.

The right of forfeiture being a harsh remedy, and liable to produce great-hardship, if not oppression, has never been favored by the law, and hence, before a lease can be declared forfeited, the law requires a strict compliance with several important pre-requisites. Among them is a demand of the rent on the day it falls due, for the precise amount, at a convenient hour before sunset, on the land, if no place is named, or at the place specified in the lease for its payment; a demand must be made, in fact, at the place, although no person be present, and there must be a failure or refusal at the time to

216      CHAPMAN *et al. v.* KIRBY.      [Sept. T.,

Opinion of the Court.

make payment. Where these things were all done, the common law authorized the landlord to declare a forfeiture if the lease provided for such forfeiture. In this case none of those things were done, and hence, the case does not fall within the common law rule, and no forfeiture occurred from the giving of the notice of the 7th of May.

If it be urged that there was a valid declaration of a forfeiture, so as to terminate the lease and authorize a re-entry by appellants under the statute, it will be found that the act of 1865 has not been complied with by appellants. The notice was served on appellee on the 7th day of May, 1867, and appellants instructed their clerk, who served the notice, not to receive the rent if appellee offered to pay it, and he offered to pay it, and the money was refused, within the ten days after the service of the notice. It was held, in the case of *Chadwick* v. *Parker*, 44 Ill. 326, in giving a construction to this statute, that ten days' notice must be given, and that the tenant may pay the rent in arrear within that time and prevent a forfeiture. We see that appellee did all he could to pay the rent then due, but it was refused, and the offer and refusal were tantamount to payment, and saved the lease from a forfeiture. We do not deem it necessary to determine whether the law of 1865 can apply to and govern leases entered into and executed before the passage of that law; nor, in the view we have taken of the case, do we propose to discuss the question of whether any person but the assignee of a reversion, or the holder of such reversion, can legally declare a forfeiture. In this view of the case, all questions arising on the instructions in reference to the forfeiture and the non-payment of rent or its tender, were properly refused.

When appellee received the lease, he acquired by it a right to the use of the power communicated from appellants' engine, through the shaft from appellee's machinery, as fully as he did to occupy the buildings and premises. It formed a part of the lease, and a failure to pay the rent did not any more

authorize appellants to withhold the power than it did to enter upon and dispossess appellee of the buildings and premises demised.    It has never been held that the mere non-payment of rent would authorize the landlord to enter upon and forcibly expel the tenant, or to remove the tenements or their appurtenances, or any part of them.    Hence, the failure to pay the rent did not authorize appellants to resume the power communicated by their engine, as it was appurtenant to the leased premises.    A lessor of a mill operated by water would have no right to shut off or divert the water which afforded the power, because his tenant failed to pay the rent, any more than to remove the building itself.    The seventh of appellants' instructions was, therefore, properly refused.

We now come to the consideration of the question of the measure of the damages.    It is objected, that on this point improper evidence was received, and improper instructions given; and in permitting the jury to find damages beyond the time when the suit was brought.    The court below admitted evidence to show the extent of appellee's business and profits during the six months previous to the withholding of the power from appellee's machinery, to enable the jury to estimate the amount of damages he sustained.    The court, on this question of damages, also instructed the jury, that if they found for appellee, in estimating his damages they could consider the nature and extent of his business at the time the power was withdrawn, the amount of business he had done during the six months previous, together with loss on stock, machinery and buildings, or other losses shown by evidence, which were necessarily sustained by appellee by reason of withholding the power and interfering with his beneficial enjoyment of his leasehold estate.

This was an action on the case, and not on contract.    In all actions of tort, the measure of damages is not less than the amount of damages sustained, and in case, all of the consequential damages sustained, connected with or flowing from

the act complained of by the plaintiff. But the damages must be the necessary and natural consequence of the act. They must be real, and not merely speculative or probable. And if, by withdrawing the steam power on the 1st of June, and a failure to restore it until the 1st of November following, his leasehold estate became reduced in value, and his stock and machinery were depreciated, and his business was broken up, and his customers were diverted to other places of business, these were all proper elements for the consideration of the jury in ascertaining the amount of damages sustained by appellee. And if all these things did occur, and were the direct result of appellants' wrongful act, they should make good the loss. It can not be held that, after the power was withheld, appellee should remain inactive, hold his machinery, unfinished stock and fixtures, until the end of his term, undisposed of, and his capital tied up and yielding him nothing. No rule of law or principle of justice could require such a course. When the power was withheld, appellee had a right to suppose that it would be permanent, and to dispose of his lease, stock, machinery and fixtures on the best terms he could obtain. And there can be no doubt that appellants should be held liable for any loss that might be sustained by such a sale.

Appellants having committed the wrong, must be held liable for all losses that flow from it. And if the loss on these various articles was the necessary and proximate result of the act,—and of that the jury must judge from the evidence,—they must be held liable. It can not be said that, when the lease has been destroyed or rendered valueless, the buildings, machinery, and stock in trade have been depreciated, and a lucrative business destroyed by the wrongful act of another, the sufferer shall only receive nominal damages, or the mere damages equal only to the value of the lease over and above the rent. The person thus wronged is entitled to recover for all of the injury he has sustained.

As to the estimate of losses sustained by the breaking up of his established business, there would seem to be no well founded objection. We all know that in many, if not all, professions and callings, years of effort, skill and toil are necessary to establish a profitable business, and that when established it is worth more than capital. Can it then be said, that a party deprived of it has no remedy, and can recover nothing for its loss, when produced by another? It has long been well recognized law, that when deprived of such business by slander, compensation for its loss may be recovered in this form of action. And why not for its loss by this more direct means? And of what does this loss consist, but the profits that would have been made had the act not been performed by appellants? And to measure such damages, the jury must have some basis for an estimate, and what more reasonable than to take the profits for a reasonable period next preceding the time when the injury was inflicted, leaving the other party to show, that by depression in trade, or other causes, they would have been less? Nor can we expect, that in actions of this character, the precise extent of the damages can be shown by demonstration. But by this means they can be ascertained with a reasonable degree of certainty. Nor do the views here expressed conflict with the case of *Green* v. *Williams*, 45 Ill. 206, as in that case the lessee had not entered upon the term; had not built up or established a business, and had not suffered such a loss. There was not in that case any basis upon which to determine whether there ever would be any profits, or upon which to estimate them. The case of *Cilley* v. *Hawkins*, 48 Ill. 308, proceeds upon the same principle.

The evidence as well as the instruction in reference to the profits and losses, were proper. That instruction being proper, the reverse was improper and was correctly refused. Nor is there any force in the objection, that appellee was not confined to the value of his lease from the time the power was withheld

until it was connected with the machinery, some five months afterwards. Appellee had sold out, his business was destroyed, and he was not bound to re-establish his business, when he had no assurance that it would be continued during the remainder of his term. Appellants had cut off the power under such circumstances as warranted him in believing that it was intended to deprive him of the use of the power, and he was not bound to suppose appellants would be more disposed to regard his rights in the future than they had been in the past. If appellants had repented and were then disposed to retract, they must not complain if appellee was unwilling to trust their future conduct, as by their own disregard of his rights in the past, they could not expect him to confide in them in the future. The instructions fairly presented the case to the jury, and the evidence sustains the verdict.

The judgment of the court below must be affirmed.

*Judgment affirmed.*