RANDOLPH BURT

*v.*

SANFORD B. FRENCH.

1. LANDLORD AND TENANT—*forfeiture for non-payment of rent.* At common law, in order to justify the landlord in declaring a forfeiture of the lease, for the non-payment of rent, a demand of the rent was necessary on the day it became due; but the statute of this State has changed the rule, and a demand may be made any time thereafter.

2. ADMISSIONS—*by act of a party.* Where a party, in rendering an account, charges himself with rent of property for each of a series of months as of the first of each month, this will be an admission, on his part, that he was to pay rent monthly, in advance.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM A. PORTER, Judge, presiding.

Mr. THOMAS SHIRLEY, for the appellant.

Mr. DAVID FALES, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee purchased a house and lot, in the city of Chicago, of one James M. Smith, of Iowa, in March, 1872. The house, at the time of the sale, was occupied by appellant and his family. He claims that he was in possession, under a lease from Smith, at $40 per month, the rent payable at the end of each month. The rent was paid up to the 1st of April, 1872, but not paid for that month, and, on the 15th, appellee

demanded the rent, but it was not paid then or during the next ten days, and he thereupon declared the lease forfeited and at an end. He thereupon brought an action of forcible detainer before a justice of the peace, where a trial was had, resulting in a verdict and judgment in favor of the defendant. An appeal was prosecuted to the Superior Court of Cook county. On a trial in that court, the jury found a verdict in favor of plaintiff, and defendant has appealed to this court.

It is urged that, even if the rent was payable for each month in advance, the forfeiture was irregular, as the rent was not demanded on the first day of the month, when it became due. Such was the common law rule, but, as we have held, our statute has changed the common law, and authorizes the demand to be made after the day. *Chadwick* v. *Parker*, 44 Ill. 326. We are not inclined to further discuss the construction of the statute, as we are satisfied with that given in the case to which we have referred.

It is insisted that the evidence fails to show that there was an agreement to pay the rent in advance. Smith swears that it was to be paid in advance; and appellant went into the house on the 1st of May, 1871, and was at that time, and for nearly a year, Smith's agent to collect rents of other persons, and, in rendering his account to Smith for money so received, he charges himself with $40 on the 1st day of May, the rent for that month; also, in the same manner for the month of June, and for August as due on the 3d, but, again, in September, as due for that month on the 1st day, and, again, as due on the 3d for the month of October. It is true that he and his daughter testified that the agreement was, that he should pay at the last of the month, or even when it should be convenient.

In this conflict, it was for the jury to determine to which the credit should be given. We think they were warranted in finding that the rent was payable on the 1st day of each month, and in advance. We regard the admission by appel-

lant, so repeatedly made, in rendering his accounts, as being the strongest character of corroborative evidence of the truth of Smith's statement. Appellant, when rendering his accounts, had no motive to deny the contract as made. He could in nowise promote his interest by giving a false construction to the agreement. It is true, that he says the mark indicating the same, as above, opposite his name, means nothing, but when opposite the names of others, it indicated that they were to pay their rent in advance. Such a version can not be considered reasonable. All know that it is the uniform custom, in rendering an account of the items of money or goods, as well as the names of individuals of whom money is received, to state the date, and that all items or names inserted, until a different date is given in the margin, are understood, and so intended, to be regarded as of that date, and this, too, whether dots or the word *ditto* be placed under the date, and opposite to the item or name. All, even very indifferent, business men so understand the account.

Appellant, we think, should not be surprised if the jury believed his version of the contract, made without interest, rather than his sworn statement, when strongly impelled, by interest, to give a false version of it; or that they should give credence to Smith's testimony, corroborated by appellant's admissions thus made, rather than the evidence of himself, daughter and the other witnesses, who were liable to misunderstand, as are all persons who casually hear a conversation, in which they have no interest, in contradiction of Smith's version of the matter. The jury were, we think, warranted in finding that the contract required him to pay rent in advance for each month, and we are unable to say it is against the evidence.

It is next urged that Smith had given appellant a power of attorney, authorizing him to lease or sell this and other houses, and that Smith, by letter, authorized appellant to draw up and execute to himself a lease for the premises in controversy, for the period of three years, the rent to be paid

at the end of each month; and that, in pursuance of such license, he drew up and executed such a lease to himself, which he produced on the trial, claiming to have sent a duplicate to Smith. In the first place, this is so novel and unbusiness-like a mode of making such leases, that it casts strong suspicion on the entire claim. If, knowing, as it is implied, that the agent could not lease to himself, all would have supposed that appellant would have prepared and sent the lease to Smith to be executed, or have relied upon his letter, and have accepted the proposition by letter.

The whole contrivance is so novel that it is hard to believe that business men would have so prepared the lease. On the other hand, rents had advanced, it appears, fifty per cent or more, and it may be inferred that appellant and Smith had ceased to occupy friendly relations; hence, we see strong motives to induce appellant to prepare and rely upon such an instrument after the difficulty arose. Again, Smith distinctly denies that he gave appellant a written power of attorney, or authorized him to execute a lease to himself. He swears that he only gave him verbal authority to collect rents, and only a verbal lease for the premises.

The claim seems to be so improbable that the jury were warranted in disregarding his evidence, from that fact alone; and the evidence, we think, shows that his daughter repeatedly stated, before appellee purchased, that her father held no written lease, although she denied having so stated, when she came to testify, and the jury seem to have disbelieved her testimony, as well as her brother's. He, like her, seems to have stated that his father had no written lease; and that warranted the jury in disregarding his evidence. As to the other witness, she only claims to have seen the power of attorney and letter authorizing appellant to execute the lease to himself. She does not state that she knew Smith's handwriting, or had any means of knowing it. Even conceding that she saw what purported to be such papers, her evidence should not affect Smith, or appellee, as his assignee, unless she

17—70TH ILL.

knew that the former had signed the papers. To hold that they were so bound on such testimony, would violate the rules of evidence, and render rights insecure.

After an attentive consideration of the entire evidence, we are unable to say that the finding is against the weight of the evidence, and the judgment of the court below must be affirmed.

*Judgment affirmed.*