SARAH WOODS

v.

MARY SOUCY.

*Filed at Mt. Vernon April 1, 1897—Rehearing denied May 6, 1897.*

1. VESTED RIGHTS—*there can be no vested right in a particular mode of procedure.* There can be no vested right in any particular remedy or in any special mode of administering a remedy.

2. STATUTES—*remedial statutes may be given retrospective operation.* While, ordinarily, a statute will not be given retrospective operation in the absence of clear legislative intention, yet where an act merely changes the remedy or law of procedure all rights of action may be enforced thereunder, whether they accrue before or after the change. (*Fisher* v. *Green,* 142 Ill. 80, distinguished and explained.)

3. LANDLORD AND TENANT—*provisions of act of 1865 apply to previously executed leases.* The provisions of sections 2, 3 and 4 of the Forcible Detainer act of 1865, (Laws of 1865, p. 107,) afterward incorporated in sections 8 and 9 of the Landlord and Tenant act, (Rev. Stat. 1874, p. 658,) apply to leases executed prior to the passage of the act of 1865 which provide for re-entry in case of breach.

4. SAME—*sections 8 and 9 of the Landlord and Tenant act provide separate and entire remedies.* Sections 8 and 9 of the Landlord and Tenant act (Rev. Stat. 1874, p. 658,) respectively provide separate, full and entire remedies for terminating a tenancy, and neither depends upon the other to give it vitality.

5. SAME—*notice to quit is a sufficient demand for rent.* The giving of the statutory notice provided for in section 9 of the Landlord and Tenant act, concerning the landlord's election to terminate a lease for non-payment of rent, is a sufficient demand for rent, and no other notice or demand is necessary before bringing ejectment. (CARTER and WILKIN, JJ., dissenting.)

APPEAL from the Circuit Court of St. Clair county; the Hon. A. S. WILDERMAN, Judge, presiding.

G. A. KOERNER, and M. MILLARD, for appellant:

The act of 1865 does not dispense with the common law requirement of a demand for rent on the premises before declaring a forfeiture of the lease. *Chadwick* v. *Parker,* 44 Ill. 326.

To create a forfeiture under the statute there must be a default in paying the rent, a demand of the same, ten

days' notice to quit, and a failure to pay the rent before the expiration of the notice. *Cone* v. *Woodworth*, 65 Ill. 477; *Woodworth* v. *Cone*, 73 id. 241.

Laws are not allowed to affect past transactions, unless it is clearly intended that they shall so operate. *In re Fuller*, 79 Ill. 107.

The rule applies to all kinds of rights arising under contracts or otherwise, and especially those relating to land. *Gage* v. *Nichols*, 135 Ill. 128; *Jimison* v. *Adams County*, 130 id. 558; *People* v. *McClellan*, 137 id. 352; *McHaney* v. *Trustees*, 68 id. 140; *People* v. *Thatcher*, 95 id. 109; *Thatcher* v. *Railroad Co.* 62 id. 477; *Drainage District* v. *Benson*, 124 id. 490; *Hansen* v. *Meyer*, 81 id. 321; *Field* v. *Brokaw*, 148 id. 654; *Fisher* v. *Green*, 142 id. 80.

Notwithstanding a limitation law only relates to the remedy, it has been held a statute of that character will not be applied to transactions had prior to the time it takes effect. *Thompson* v. *Alexander*, 11 Ill. 54.

A law which shortens the time for redemption in a foreclosure suit is unconstitutional as to prior mortgages. *Cowgill* v. *Power*, 1 Mich. 369.

So also is a law that gives a right to redeem within twelve months, where no such right existed before. *Benson* v. *Kinzie*, 1 How. 311.

A law is void that undertakes to extend the time allowed for redemption. *Gowen* v. *Schroeder*, 4 Minn. 387; *Robinson* v. *Ham*, 13 Wis. 341; *Greenfield* v. *Dorris*, 1 Sneed, 550.

A power of sale in a deed of trust cannot be taken away by subsequent legislation, although foreclosure in the courts remained as a remedy. *Fisher* v. *Green*, 142 Ill. 80.

DILL & SCHAEFER, for appellee:

If a lease contains a clause of re-entry, the landlord can, if he choose, resort to his common law remedy, or, failing in that, he may, after default, give notice that unless the arrears are paid in ten days the lease will ter-

minate, and after the expiration of the term may bring his suit without further notice.   *Chadwick* v. *Parker*, 44 Ill. 326.

Whatever may have been the rule at common law in regard to demand for rent on the precise day the same became due, at a seemly hour before sunset, etc., no such demand is necessary under the act of 1865.   *Leary* v. *Pattison*, 66 Ill. 205.

Remedial statutes should have a liberal exposition, in order that the remedy provided by them may be advanced,—not crippled.   3 Kinney's Digest, 2807; *Jackson* v. *Warren*, 32 Ill. 334.

Per CURIAM: This was an action of ejectment, brought in the circuit court of St. Clair county on December 30, 1890, by Mary Soucy, against Lewis Woods and Sarah Woods, for the recovery of lots 1 and 2 in a subdivision of lot 3 of the Cahokia commons, in St. Clair county. Lewis Woods pleaded, disclaiming possession.   At the September term, 1894, the cause was tried by the court, by consent of parties, and Sarah Woods found guilty of unlawfully withholding the possession of said premises from the plaintiff.   The suit was dismissed as to Lewis Woods.   A motion as at common law for a new trial was made and overruled, and appellant appealed.   It was admitted that the village of Cahokia was the common source of title.

It is insisted by appellee that appellant had no title to or right of possession of the property whatever; but it is a well known principle of law that a plaintiff in ejectment must recover on the strength of his own title, without regard to the weakness of that of his adversary.

It appears from the evidence that on June 28, 1841, Isadore LeCompt, supervisor of the village of Cahokia, leased to Mary Hill the premises in question for a term of ninety-nine years, under the provisions of the act of February 17, 1841, authorizing the execution of leases of

such lands by the supervisor, and that said Mary Hill assigned to James McLaughlin, and McLaughlin and wife assigned to Mary Neville, who, as Mary Hays, by her will dated August 28, 1851, bequeathed the property to her two sons, Michael and Patrick Neville, and appointed John Short her executor, who, as such executor, after her death, in 1851, took possession of the property and paid the yearly rent of $17 stipulated in the original lease until his death, in 1877. The two sons of Mary Hays, Michael and Patrick, were twelve and seventeen years of age, respectively, at the time of the death of their mother. They have never been heard from since their departure from Cahokia, in 1854. Appellant, Mary Woods, took possession of the property after the death of John Short, and has held it ever since, as she testified, for the Neville heirs. She does not otherwise claim it. No rent has been paid for the premises since the death of Short. The original lease seems to have been lost, but from the assignment thereof given in evidence it appeared that the lease provided that the rent should be paid to the supervisor, or his successors in office, at the beginning of each year, and that in default of such payment right of re-entry was provided, and that thereupon the lease should be utterly void.

On March 22, 1881,—upwards of forty years after the original lease was given,—Clovis Soucy, husband of appellee and supervisor of Cahokia, leased the premises in controversy to Franklin B. Bowman for ninety-nine years, and on May 9, 1881, said Soucy conveyed to said Bowman said premises in fee simple. August 6, 1884, said Bowman and wife conveyed by quit-claim deed to Lewis Woods, the husband of appellant, and the latter, to secure the purchase money, executed a mortgage upon said premises to said Bowman, which was foreclosed in a suit by appellee, Mary Soucy, to whom the notes for the purchase money had been assigned by Bowman the day the mortgage was given by Lewis Woods, and at a

sale under the decree of foreclosure appellee purchased the property and received a deed therefor from the master in chancery. It is claimed by appellee that these transactions were had with the consent of appellant, and amounted to a re-entry, but she rests her right of recovery principally on the theory that there was a forfeiture of the original lease by a demand for rent and a notice to quit under the statute. Frank B. Bowman testified that he went to the leased premises two weeks, and perhaps two months, prior to March 11, 1881, as agent of Soucy, the supervisor of Cahokia, and made a demand for the payment of the rent then due by delivering a copy of a written demand to a young woman sixteen or eighteen years of age, who was the only person then in possession of the premises; that no rent was paid; that the amount of the rent then due was stated in the demand for rent, but witness did not have any personal knowledge of the amount that was due; that the young woman was not a member or a relative of the Woods family, but witness thought she was a servant or employee. The evidence further showed that on March 11, 1881, Soucy, the supervisor, caused the following notice to quit to be served on appellant, who was in possession of the premises:

"To the legal representative of Mary Hill, lessee in the lease granted by the supervisor of said village, etc., dated June 28, 1841, and to all claiming under said lease:

"You are hereby notified that in consequence of your default in paying the yearly rent due under said lease of the premises now occupied by you, being lot No. 3 of said commons of the village of Cahokia, in said St. Clair county, (for a more particular description of said premises reference being had to said lease and to the plat of the subdivision of survey No. 777, recorded in the office of the recorder of said St. Clair county, Illinois, in book M of deeds, on page 11,) I, Clovis Soucy, supervisor of said village and of said commons, have elected to determine your lease, and you are hereby notified to quit and deliver up possession of the same to me within ten days of this date.

"Dated March 11th, 1881.

CLOVIS SOUCY, *Supervisor, etc.*"

Sections 8, 9 and 10 of the Landlord and Tenant act (Hurd's Stat. 1895, p. 976,) are as follows:

"Sec. 8. The landlord or his agent may, at any time after rent is due, demand payment thereof, and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than five days after the service thereof, the lease will be terminated. If the tenant shall not, within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended, and sue for the possession under the statute in relation to forcible entry and detainer, or maintain ejectment without further notice or demand.

"Sec. 9. When default is made in any of the terms of a lease it shall not be necessary to give more than ten days' notice to quit or of the termination of such tenancy, and the same may be terminated on giving such notice to quit at any time after such default in any of the terms of such lease, which notice may be substantially in the following form, viz:

"*To A B:*—You are hereby notified that in consequence of your default in (here insert the character of the default) of the premises now occupied by you, being, etc., (here describe the premises,) I have elected to determine your lease, and you are hereby notified to quit and deliver up possession of the same to me within ten days of this date.   (Dated, etc.)

"To be signed by the lessor or his agent; and no other notice or demand of possession or termination of such tenancy shall be necessary.

"Sec. 10. Any demand may be made or notice served by delivering a written or printed, or partly written and printed, copy thereof to the tenant, or by leaving the same with some person above the age of twelve years residing on or in possession of said premises, and in case no one is in the actual possession of said premises, then by posting the same on the premises."

The questions presented for decision are: First, do sections 8 and 9, *supra,* or does either of them, apply to leases made before their enactment; second, was it neces-

sary to make a demand for the rent due, as well as to give the notice of election to terminate and to quit, before a forfeiture could be had, and if so, was the notice above set out a sufficient demand for the rent; third, if such notice was not a sufficient demand for the rent due, was the written demand testified to by Bowman as having been delivered to some one on the premises not shown to be residing or in possession there, a sufficient demand for the rent. These questions will be considered in the order above stated.

When the lease in question was made, in 1841, there were two methods of enforcing a forfeiture: one was by demanding the precise amount of rent on the day it became due, at some convenient hour before sunset, on the premises, as required by the strict rule at common law; and the other was by action of ejectment when one-half year's rent was in arrear, under the provisions of the statute which are now contained in section 4 of the Landlord and Tenant act. It is unnecessary to consider in detail either of these methods, as neither was pursued here. They are reviewed in *Chadwick* v. *Parker*, 44 Ill. 326.

In the act of February 16, 1865, amending the laws in relation to forcible entry and detainer, were two sections which require notice here. Section 2 was the same as section 9 of the present Landlord and Tenant act, except that it specifically mentioned default in the payment of rent as well as in other covenants. Section 4, among other things, provided that "where the covenant of a lease has been violated by the non-payment of rent when due, it shall be sufficient for the landlord, his agent or attorney, to make demand for payment of rent due on any day prior to the commencement of his action of forcible detainer." So it is seen that section 9, under which it is said the forfeiture was had in this case, was first enacted in 1865, and it is contended by appellant that to apply said act to this lease would be to give it a retrospective operation, and to impair the obligation of the contract

entered into by virtue of the original lease, made in 1841. There is nothing in the act of 1865 to indicate the intention of the legislature in this regard, and while the question raised was presented in *Chapman* v. *Kirby*, 49 Ill. 211, the decision was based on other grounds, and it was merely said, "we do not deem it necessary to determine whether the law of 1865 can apply to and govern leases entered into and executed before the passage of that law." If, by applying the act to leases entered into prior to its passage, the effect would be to impair the obligation of the contract, it is evident that such a construction would render the act void; but if the act in question has relation to the remedy only, by simply changing the mere form of procedure by which the right is enforced or by giving an additional remedy, leaving the contract of the parties and their rights secured thereby unchanged, it is plain the obligation of the contract would not be impaired, and the act would apply to contracts entered into before its enactment, by providing a different or an additional remedy for their enforcement, as well as to contracts made subsequently. There can be no vested right in any particular remedy or in any special mode of administering it. (*Bruce* v. *Schuyler*, 4 Gilm. 221; *Dobbins* v. *First Nat. Bank*, 112 Ill. 553.) While it is the general rule that statutes will not be so construed as to give them a retrospective operation unless it clearly appears that such was the legislative intention, still, "where the act merely changes the remedy or the law of procedure, all rights of action will be enforcible under the new procedure, without regard to whether they accrued before or after such change in the law." (*Winslow* v. *People*, 117 Ill. 152; *Wood* v. *Child*, 20 id. 209; *Smith* v. *Bryan*, 34 id. 364; *People* v. *Peacock*, 98 id. 172.) And it was held in *Chapin* v. *Billings*, 91 Ill. 539, that where the mortgagor in a deed of trust had covenanted to give immediate possession to the purchaser at the sale which should be made under the power of sale, the statute passed after the execution

of the deed of trust, extending the remedy of forcible entry and detainer for the recovery of possession to such cases, applied to a case arising under such a previously executed deed, and this court said (p. 542): "Even if the statute gives a more speedy remedy than existed when the deed was executed, still it was not as speedy as his contract and covenant provided for, and the action could not dispossess him as soon as his covenant bound him to surrender possession."

By construing the act of 1865 to apply to the lease in question it would not be open to the objection that under the guise of changing the remedy the contract would be impaired by taking away the remedies which already existed, without providing adequate remedies in their stead. No previously existing remedy is taken away by this statute. It merely provides an additional remedy. In other words, it gives the lessor a remedy for enforcing the contract which he did not have before, and where he proceeds to enforce compliance with the contract by the new remedy, ample time and opportunity are given the lessee to prevent a forfeiture by simply complying with the obligations of the contract on his part after receipt by him of the demand and notice under the statute.

We do not think this case comes within the reasoning employed in *Fisher* v. *Green*, 142 Ill. 80. The deed of trust there involved contained a power of sale. When the deed was made the statute was that no sale could be made under the power when the grantor was dead. Afterward the statute was amended so as to provide that no such sale could be made when the grantor, *or owner of the equity of redemption*, was dead. The sale in question was made after the amendment was passed. The grantor was living but the owner of the equity of redemption was dead, and it was held that the sale was good; that the amendatory statute could not be given a retroactive effect, so as to apply to deeds of trust executed before it went into force; that to give it such a construction would impair the obli-

gation of the contract. In answer to the argument that
the statute affected the remedy only, Mr. Justice.BAILEY,
in delivering the opinion of the court, said (p. 92): "With
this view we are unable to concur. The power of sale in
a deed of trust is a power coupled with an interest. It
creates a trust, in the specific execution of which the
party secured has a property right. The power of sale
in the deed of trust in question vested in the beneficiary
of the trust the right, in case of default, to have the
mortgaged premises sold for the satisfaction of the debt
secured, without judicial proceedings and without re-
demption. The act of 1874, if applied to said deed of
trust, has the effect of divesting the party secured of the
right to have the mortgaged property sold under the
power and without redemption, and of substituting in
place of such sale a judicial foreclosure and sale with
statutory redemption. Such material change in the con-
tract rights of the party secured, even if intended by
the legislature, was, in our opinion, one which it had no
constitutional power to make."

It might well be contended in such a case, that if the
legislature, by subsequent enactment, could annex excep-
tions to the execution of the power of sale contained in
the contract, it might render such power, which was an
important part of the contract, nugatory, or take it away
altogether. But in the case at bar the lease contained
no specific mode of forfeiture other than the provision
that the lessor might re-enter on non-payment of rent
due, and thereupon the lease should become null and
void. It is not contended, of course, that the contract
rights of the lessor are impaired by the act of 1865, but
only those of the lessee. We are unable to see how the
contract rights of the lessee are impaired by the statute.
The lessee had covenanted to pay the rent yearly at the
beginning of the year, and that on failure to pay the les-
sor might re-enter and the lease become void. It would
seem that the statute in question does nothing more than

to provide another mode of enforcing the lessee's contract. It takes nothing from her. As applied to the facts in this case, it would not have the effect of causing a forfeiture by the mode prescribed in the act for the nonpayment of the rent which accrued before the act took effect, for all such rent had been paid.

Very nearly the precise question here involved was decided by the Court of Appeals of New York in *Van-Rensselaer* v. *Snyder*, 13 N. Y. 299, where a lease made in 1794, provided that on default in payment of rent the lessor might distrain, and in case there should be no sufficient distress he might re-enter. A statute was passed in 1846 abolishing distress for rent and providing that the lessor might re-enter for default in payment of rent, upon fifteen days' notice to the lessee. It was held that the act applied to the lease there in question, and that the lessor could maintain ejectment after having given the statutory notice, notwithstanding a sufficiency of goods upon the premises to satisfy the rent. It was there contended, as in the case at bar, that the statute impaired the obligation of the contract, but it was held otherwise, and that it related to the remedy only, and that the legislature had the power to change the remedy. It will be observed that in that case the remedy changed was one which was not only then provided by law but was in part embraced in the contract itself. See, also, *Conkey* v. *Hart*, 14 N. Y. 22, and *Morse* v. *Gould*, 11 id. 281. For other authorities on the subject see 23 Am. & Eng. Ency. of Law, 504; *Farmer* v. *People*, 77 Ill. 322; *Templeton* v. *Horne*, 82 id. 491; *Williams* v. *Waldo*, 3 Scam. 264; *People ex rel.* v. *Riggs*, 56 Ill. 483; *Reapers' Bank* v. *Willard*, 24 id. 433.

Holding, as we do, that the act of 1865 applied to existing leases, the second question arises, viz., Was it necessary to make a demand for the rent due, as well as to give the notice of election to terminate and to quit, before a forfeiture could be had?—and if so, was the notice above set out a sufficient demand for the rent due?

166—27

It is too well understood to require argument or citation of authority, that forfeitures are not favored in law. Not only was a demand for the rent due necessary at common law, which was in force in this State prior to the act of February 16, 1865, to produce a forfeiture, but great strictness was required in making it, in respect to time, place and amount. When, however, these requirements were conformed to by the landlord a corresponding strictness was imposed upon the tenant, he being required to make payment at once upon demand, in order to avoid a forfeiture of his lease. To remedy the hardships which frequently resulted to one or both parties under that law, the statute of February 16, 1865, was passed, and the foregoing sections of the present statute afterward taken therefrom and rewritten. (2 Starr & Curtis, p. 1494, sec. 9, note.) Section 2 of the act of 1865 (Laws of 1865, p. 107,) provided that "in all cases of tenancies where default shall be made in the payment of rent due or in any of the covenants of a lease, it shall not be necessary," etc., concluding with the language employed in section 9 and giving the same form of notice. Section 3 provided for the service of such notice, and section 4, among other things, said: "And where the covenant of a lease has been violated by the non-payment of rent when due, it shall be sufficient for the landlord, his agent or attorney, to make demand for payment of rent due on any day prior to the commencement of his action of forcible detainer, and in the case mentioned in this section it shall only be necessary to give the person in possession ten days' notice to quit." Under this statute it was held that where the landlord sought to forfeit a lease for non-payment of rent he must still make a demand therefor, though not in conformity with the strict requirements of the common law, and that the tenant might avoid the forfeiture upon such demand by paying the rent due within the ten days. *Chadwick* v. *Parker,* 44 Ill. 326; *Cone* v. *Woodward,* 65 id. 477; *Dodge* v. *Wright,* 48 id. 382.

By the revision of 1873 the provisions of the act of
1865 were preserved and incorporated, and the strict,
technical rules of the common law have been abrogated.
Under the revision different provisions are incorporated.
Section 8 includes one means of terminating a tenancy
and section 9 another. Each is separate, full, distinct
and entire in itself. Neither has reference to the other
to give it vitality. By the provisions of section 9 of the
act, when default is made in the terms of a lease the land-
lord may give ten days' notice of the termination of such
tenancy at any time after such default. The payment of
rent is one of the usual and ordinary terms of a lease.
When such notice is given under the provisions of that
section, it is expressly provided that no other notice or
demand for possession or termination of such tenancy
shall be necessary. It is clear the meaning of the words
"no other notice  *  *  *  shall be necessary" for the ter-
mination of a tenancy, as used in section 9, is to exclude
the idea that there must be a demand of payment and
notice of termination of the tenancy, as in section 8. Any
other construction would render necessary the exclusion
of the words above quoted. The purpose of both sections
8 and 9 is the termination of a tenancy. By each section
the manner of terminating such tenancy is declared. In
the first case, after rent is due, the landlord may demand
payment, and notify the tenant, in writing, that unless
payment is made within a time mentioned, not less than
five days after service, the lease will be terminated. If
the tenant shall not, within the time mentioned, pay the
rent due, the landlord may sue without further notice or
demand. By section 9, if a lease exists which provides
for payment of rent, and there is a default in that cove-
nant, the landlord may give the notice authorized by that
section—as was given in this case—to quit and deliver
up possession. Under section 8 the tenant has five days
after service to pay rent. Under section 9 he has ten
days within which to pay rent. (*Chapman* v. *Kirby*, 49 Ill.

211; *Gradle* v. *Warner*, 140 id. 123.) Payment of rent within those times would defeat a right of recovery under these respective sections.

In *Chadwick* v. *Parker*, *supra*, it was said (p. 335): "If his lease contains a clause of re-entry, he (the landlord) can, if he choose, resort to his common law remedy, or, failing in that, he may, after default, give notice that unless the arrears are paid within ten days his lease will terminate, and that he must quit the possession of the premises on the notice provided by the statute, and on the failure of the tenant to pay such arrears he may, after the expiration of the time, bring his suit without further notice. If the lease contains no such clause, then the landlord may, after default in payment, give a similar notice and with like effect. This was, no doubt, what was intended by the legislature, as it brings within its provisions a large class of cases not embraced in the common law, and affords a remedy in such cases, not previously possessed, of terminating a lease and regaining possession where an insolvent tenant would not pay his rent, instead of leaving the landlord, as he was before, to his action for the recovery of his rent. In this case more than ten days elapsed after the notice was given and the suit was brought, and the appellant should, to prevent a forfeiture, have tendered the rent in arrear before the expiration of ten days from the time the notice was served. We have seen that the statute gave him this right, but, failing to pay, his lease became forfeited and appellee had a right to maintain his action."

The notice of a default in failing to pay rent under the terms of a lease and to quit in the same notice giving ten days time to make the payment to avoid the forfeiture is a demand for payment of rent. In the words of the statute, "no other notice or demand of possession or termination of such tenancy shall be necessary." The notice in this case was sufficient as a demand for the payment of rent and the termination of the tenancy. The provi-

sions of section 9 are more favorable to the tenant than was the common law. The notice in pursuance of section 9 is that rent is due, that the tenant is in default, that the lease will be terminated, and that the tenant must quit and deliver up possession within ten days. By paying rent within that time forfeiture is avoided. In this case payment was not made and forfeiture resulted, and the plaintiff was entitled to recover.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. Justice Carter: I do not agree with the majority of the court in the conclusions reached in this case, and dissent from the view, and the reasoning employed to support it, that no demand for the rent was necessary before the lease could be forfeited, or that the notice to quit set out in the opinion was a sufficient demand. As I read the authorities cited, and others, they lead to the conclusion that a demand for rent is still a prerequisite to a forfeiture of a lease containing no waiver of such demand. That such demand may be embraced in a notice to quit I do not doubt, but that the notice in question contained no such demand seems clear to me. To forfeit a valuable lease, having many years to run, for non-payment of rent, without any demand for the rent due, upon a mere notice to quit served upon an occupant who probably had no knowledge of the amount due or claimed to be due, is to reverse the maxim that the law does not favor forfeitures. It is no hardship upon the landlord to require him to state what he demands, so that the tenant, by compliance, may avoid a forfeiture. Great strictness in making such a demand was necessary at common law, and while such strictness is no longer necessary, I cannot agree to the view that either the act of 1865 or the revision of 1873 has dispensed with the necessity of a demand for rent before a forfeiture can be declared. I fully agree that the law of 1865 applies to the

lease in question, although it was made in 1841,—that the statute merely changed the remedy or gave a new one, and did not impair the obligation of the contract; but for the reason that there was no demand for the rent in arrear I think there was no forfeiture, and that the judgment should be reversed.

Mr. JUSTICE WILKIN: I cannot agree that the notice to quit here was a demand for rent, and concur in the dissenting opinion of Mr. Justice CARTER.