## Joseph Fitzsimmons et al. v. Louis Munch.

1. JUDGMENT—*Entry Nunc Pro Tunc.*—The usual practice in this State, after overruling a motion for a new trial, is for the judge to write the words, "Judgment on verdict," in his docket, and from this entry the clerk is authorized to write up a formal judgment; but if by an oversight of the clerk no judgment is written up at the proper term, it is competent for the court, at the next succeeding term, to order the judgment entered *nunc pro tunc.*

2. MEASURE OF DAMAGES—*For Diverting Water from a Mill.*—In estimating such losses it is proper for the jury to take into consideration the extent of the plaintiff's business and his profits for a reasonable period next preceding the grievance complained of in diverting the water, leaving the defendant to show that from other causes the profits would have been less.

**Trespass on the Case.**—Diverting a water-course. Appeal from the Circuit Court of McHenry County; the Hon. CHARLES E. FULLER, Judge, presiding. Heard in this court at the May term, 1898. Reversed and remanded. Opinion filed December 14, 1898.

JOHN B. LYON and D. T. SMILEY, attorneys for appellants.

C. P. BARNES and O. H. GILMORE, attorneys for appellee.

MR. JUSTICE CRABTREE delivered the opinion of the court.

This was an action on the case brought by appellee against appellants, to recover damages for the alleged wrongful diversion of water from a stream which furnished power to run a mill owned and operated by appellee.

There was a trial by jury resulting in a verdict in appellee's favor for $1,200. This cause was before us at the December term, 1897, on appellant's appeal from the Circuit Court, and we then dismissed the appeal on the ground that no judgment had been entered in the court below from which an appeal could be prosecuted.

At the January term, 1898, of the Circuit Court, on motion of appellee, the Circuit Court directed the clerk to amend the record and enter a proper judgment on the verdict

*nunc pro tunc.* This action was taken before any remanding order from this court was filed in the Circuit Court. Appellants again bring the cause to this court by appeal, and now insist that the court had no power to order the entry of the judgment *nunc pro tunc.* We think the point is not well taken. On the judge's docket of the term at which the cause was tried, after overruling the motion for a new trial, the judge wrote the words, " Judgment on verdict." This we believe is the usual practice in this State, and from this entry the clerk is authorized to write up a formal judgment. By an oversight of the clerk no judgment was entered in this cause at the proper term, but we think it was entirely competent for the court at the next succeeding term, to order the judgment entered *nunc pro tunc,* and that the judge's docket entry at the former term was a sufficient memorial paper, or minute in the case, upon which to correct the record.

The case of Smith v. Stevens, 133 Ill. 183, is cited to the point that the Circuit Court was without jurisdiction in the cause until a remanding order from this court was filed therein. That decision was based upon the eighty-second section of the practice act, and appears to apply only to cases where a judgment had been entered.

In the case at bar no judgment had been entered and we are of opinion the authority above cited is not decisive of the point under consideration. We hold there was no error in ordering the entry of the judgment *nunc pro tunc.* But an examination of the evidence in the record satisfies us that it was entirely insufficient to warrant a verdict of $1,200 in favor of appellee, and that the damages are excessive. For that reason the judgment will be reversed and the cause remanded.

It appears from the evidence that the water alleged to have been diverted from appellee's mill pond issued from a spring upon the land of Charles Patterson, one of the original defendants herein, who died before the trial of the cause and whose name was stricken from the cause. In 1885 appellants established and operated a cheese factory on the

lands of Patterson, near the spring, and in connection with Patterson, and by his consent, drew from such spring sufficient water to use in the conduct of the business of the cheese factory, and laid pipes from such factory to appellee's mill pond for the return of any surplus water remaining after the uses of the factory had been satisfied. There is no question that Patterson then owned the land on which the spring was situated, and certainly had as great a right to the use of the water issuing therefrom as had appellee.

Nevertheless, in June, 1885, appellee filed a bill in equity against appellants to restrain them from diverting the water of the spring from the mill pond, and in June, 1891, a final decree was entered in the chancery case perpetually enjoining appellants from diverting the water of the spring to the cheese factory, as prayed in the bill. This decree, which it appears was never appealed from but still remains in full force and effect, was put in evidence by appellee to show an adjudication of his right to the water. We do not understand it to be claimed that since this decree was entered appellants have diverted water in violation of the injunction, but this suit was brought to recover damages for the diversion of the water from 1885 to 1891, when the final decree was entered in the chancery cause.

One of the contentions of appellants is, that this decree was a final determination of the rights of the parties as to all matters arising out of this alleged wrongful diversion of water from the Patterson spring up to the date of the decree. That inasmuch as appellee might have had his damages assessed in that case, when the court had full jurisdiction of the subject-matter and of the parties, he is now estopped from maintaining the present suit for damages.

The principles relied upon in support of this contention are, first, that if a court of equity once acquires jurisdiction for any purpose, it will retain it for all purposes and render complete justice between the parties, settling all questions incident to the principal relief sought, and leaving nothing to be litigated by the parties in the future which arises out of the same controversy. And this is the rule, even though

matters may be passed upon which alone would not be cognizable in a court of equity.    Many authorities are cited by counsel for appellants in support of this proposition, which, however, is so well understood that we need not repeat them; second, that the principle of *res adjudicata* embraces not only what actually was determined in the former case, but also extends to any other matters properly involved, and which might have been raised and determined. This proposition is also well understood, and we deem it unnecessary to repeat the authorities cited by counsel to sustain it.

The serious question is whether these principles are properly applicable to the case at bar, and this is a point we do not deem it obligatory upon us to determine in the present state of the pleadings.    There is no plea raising any such issue nor does the cause appear to have been tried by appellants upon that theory.    Some two weeks after the cause was tried, and while the motion for a new trial was pending, appellants asked leave to file a plea setting up this defense of *res adjudicata* and presented such a plea, but the court refused the leave and this is assigned for error.    We are not prepared to hold that the court erred in refusing the leave under the circumstances, and in the absence of any further showing than appears to have been made.

But as the cause must be tried again, we think appellants should be granted leave to file a suitable plea before the next trial, setting up the defense of *res adjudicata* if they desire to do so, that the question may be fairly preserved and presented in the record.

It is assigned for error that the court erred in admitting improper evidence on the part of appellee, but as no mention is made of this matter in the brief and argument of counsel for appellants, this objection must be regarded as waived.

We have already said that the evidence did not sustain the verdict of the jury as to amount of damages.    Substantially all the evidence upon the question of damages was given by the appellee himself, the effect of which was that

the capacity of his mill from 1885 to 1891 was fifty barrels
of flour in twenty-four hours; that his supply of water
during the same years was 1,400 cubic feet, and that the
diversion of water from his mill pond by appellants, cut him
off from the use of his mill an hour and a half a day; that
he could grind fifty barrels an hour at a cost of four cents
per bushel, or two dollars per hour; that the water of
which he was deprived would run the mill from an hour to
an hour and a half longer each day.

We think this testimony, taken as a whole, was an insuffi-
cient basis upon which to form any definite estimate of the
damages appellee may have sustained by reason of the water
having been cut off from his mill pond. All these state-
ments prove is, that the appellee might, at least a portion of
the time, have lost some possible or probable profits, but
how much can not be ascertained with any certainty with-
out further evidence.

The loss, if any were sustained, would be the earnings of
the mill, less operating expenses; but neither of these items
can be ascertained from the evidence. Whether appellee
had sufficient business to keep the mill running ten hours
per day constantly does not appear. He had power enough
to run eight and one-half hours per day, even without the
water diverted to the cheese factory, and it appears that at
least a part of the time he ground all the grain that came
to his mill, even with this power, so that what he may have
lost was purely a matter of guess-work.

The evidence shows that appellee had owned and operated
the mill for ten years prior to the grievance complained of
in cutting off the water. This was a sufficient length of
time to have determined and ascertained with reasonable
certainty what the annual or monthly profits for the business
were, if any, whereby some guide could be obtained as to
the probable and reasonable expectations of the future.
While this would not furnish a certain guide, yet it may be
the best obtainable, and can not be considered entirely
speculative. At any rate it seems to be the most reasona-
ble basis for the ascertainment of the damages of which the

Fitzsimmons v. Munch.

nature of the case will permit.   And this seems to be the rule approved by the Supreme Court in Chapman et al. v. Kirby, 49 Ill. 211.   In that case Kirby had brought an action on the case against Chapman et al. to recover damages for wrongfully shutting off steam power from his factory. The court below admitted evidence to show the extent of Kirby's business and profits during the six months previous to the withholding of the power from his machinery, to enable the jury to estimate the amount of damages he had sustained.   This action of the lower court was sustained by the Supreme Court, and it was held proper for the jury to take into consideration the extent of the plaintiff's business, and his profits for a reasonable period next preceding the time when the injury was inflicted, leaving the defendant to show, that by depression in trade, or from other causes, the profits would have been less.

We think this rule is a fair one to be adopted in the trial of the case at bar, so far as the question of damages is concerned.

It is complained that the only instruction given for appellee was erroneous, because it directed a verdict for appellee and also because it left the question of damages to the jury without giving them any rule by which they should be guided in making the assessment thereof.   As to the first objection to the instruction, as the evidence then stood, appellee was certainly entitled to at least nominal damages, and hence there was no error in directing a verdict in his favor; but upon the other point we think the objection is well taken.   The jury were left to find the damages upon their own notions as to what the appellee ought to recover, regardless of any legal rule by which they should be guided. A similar instruction upon the question of damages was condemned in the case of Keightlinger v. Egan, 65 Ill. 235.

It is alleged as error that the court refused the second and third instructions asked by appellants.   The theory of these instructions was correct, but they required the plaintiff to " establish " his damages by the proofs, whereas the law only requires a party to prove his cause of action on the one

hand, or his defense on the other, by a preponderance of the evidence. As the instructions placed upon the plaintiff a greater burden as to the proofs than the law required, it was not error to refuse them in the form presented.

But for the reasons given the judgment will be reversed and the cause remanded for a new trial in conformity with the views herein expressed. Reversed and remanded.