WILLIAM LANDIS *et al.*

*v.*

JOHN M. WOLF.

*Opinion filed December 16, 1903.*

1. INJUNCTION—*damages for injury to business may be recovered in a suit on bond.* In an action on an injunction bond damages may be allowed, where, by the issuance of the injunction, the plaintiff's business was unavoidably suspended and thereby injured.

2. SAME—*measure of damages for an injury to business.* The rate of profits for a reasonable period next preceding the issuing of an injunction suspending the plaintiff's business may be taken as the measure of damages in a suit on the bond, leaving the defendant to show, if he can, that by depression in trade or other causes the profits would have been less than formerly.

3. SAME—*dissolution of injunction shows its wrongful issue.* Dismissal of a bill for specific performance and dissolution of an ancillary injunction are conclusive that the injunction was wrongfully issued.

4. SAME—*counsel fees incurred in general defense of suit not allowable as damages.* Where an injunction is ancillary to the principal relief sought by the bill and its dissolution is but incidental to the defense, counsel fees incurred in defending the suit generally cannot be allowed as damages in a suit on the injunction bond.

5. SAME—*evidence as to counsel fees must be confined to allowable items.* Counsel fees incurred in procuring dissolution of an injunction as incidental to the principal relief sought cannot be allowed as damages in a suit on the bond, where the evidence makes no discrimination between the services rendered in general defense of the suit and those rendered in procuring the dissolution.

6. SAME—*what not a violation of injunction.* Where a vendor of a stock of goods enjoins the vendee from carrying on the business pending the determination of the vendor's suit for specific performance, the vendee may, as a creditor, attach the stock of goods without violating the injunction or defeating his right to damages for a suspension of his business caused by the wrongful issue of the injunction.

*Landis* v. *Wolf*, 109 Ill. App. 44, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the County Court of Macon county; the Hon. WILLIAM L. HAMMER, Judge, presiding.

This is an action of debt, brought by appellee against appellants upon an injunction bond, executed by appellants, as obligors, to appellee, as obligee, the appellant, George F. Righter, being surety upon the bond. Pleas were filed by the defendants, and the cause was tried by the court without a jury. The court found the issues for appellee, plaintiff below, and assessed the damages at $1000.00, and thereupon rendered judgment in favor of appellee against the appellants, defendants below, for $1000.00 debt, and damages $1000.00, together with all costs and charges, judgment to be satisfied upon payment of the damages. Upon appeal to the Appellate Court the judgment was affirmed. The present appeal is prosecuted from such judgment of affirmance

The bond sued upon was dated the 25th day of March, 1901; and recited that appellant, Landis, filed his bill in the circuit court of Moultrie county against appellee, praying, among other things, for an injunction, restraining appellee from interfering with the dry goods store of Landis, or from selling any of the goods therefrom, or from coming into said store, until the further order of the court; and that the master in chancery of the court in vacation allowed the injunction according to the prayer of the bill upon Landis giving bond and security, as provided by law, and as required by the order of the master. The condition of the bond is that Landis, his executors or administrators, or any of them, shall pay or cause to be paid to Wolf, his executors, administrators or assigns, "all damages which may be caused to him, if said injunction be wrongfully sued, and also all such costs and damages as shall be awarded against the said complainant, William Landis, in case the said injunction shall be dissolved."

The declaration in the case, after setting up the terms of the bond, and that the writ of injunction was issued and served, alleges that, at the September term of the

court in 1901, it was decreed that the injunction should be dissolved; and the declaration thereupon further alleges that, by reason of the unlawful issuing of the injunction, appellee, Wolf, was, during all the time the injunction remained in force, prevented from merchandising and making profit of the said stock of dry goods and from carrying on his business as a merchant, and that thereby he, the said Wolf, sustained injury to his business, amounting to the sum of $1000.00; and also was compelled to and did become legally bound to pay out divers sums of money, amounting to the sum of $1000.00, for the fees and charges of solicitors and counsel, and for other charges and expenses in and about securing the dissolution of the injunction.

The first plea filed by the defendants is the plea of *non est factum.* The second plea, to which the plaintiff filed a *similiter*, avers that plaintiff, during the time mentioned, was not prevented by reason of the injunction from carrying on the business of a merchant, nor was he thereby deprived of any gains or profits he might otherwise have made. The third amended plea, filed by the defendants, to which the plaintiff below filed a *similiter*, alleges that the bill so filed was a bill for the specific performance of a contract between Landis and Wolf, and the injunction issued was an interlocutory injunction, granted in vacation, whereby Landis sought to compel Wolf to convey to him certain real estate, and give him certain notes, and a chattel mortgage, in payment for said stock of merchandise, except boots and shoes, and to restrain him from disposing of or interfering with said stock of goods during the pendency of said suit; and that all the fees and charges, paid or incurred by the plaintiff, Wolf, for fees and charges of solicitors and counsel in his defense in that behalf, were paid or incurred in the defense of said suit for specific performance; and, upon final hearing of said cause for specific performance, the court dismissed the bill and supplemental bill of said

defendant for want of equity, and ordered the injunction to be dissolved, and said alleged fees and charges for services of attorneys were not paid or incurred in and about procuring the dissolution of the injunction.    The fifth plea, to which the *similiter* was filed, denies that plaintiff was compelled to pay out, or did pay out by reason of the injunction, any sums of money for fees and charges of solicitors and counsel in and about the defense of said suit.  The fourth plea, and the sixth amended plea, and the additional seventh plea, filed by defendants below, were demurred to by the plaintiff, and by agreement the two latter pleas were to be considered as an amendment to the fourth plea.    The demurrer to the amended sixth plea and the additional seventh plea was sustained, and the defendants below excepted to the ruling of the court, sustaining the demurrer, and abided by their said pleas.    The amended sixth plea sets up, substantially, that plaintiff is only entitled to one cent damages, and alleges that, on April 5, 1901, the plaintiff, Wolf, commenced suit by attachment in the circuit court of Clay county against Landis, therein making his own affidavit for attachment, and claiming that Landis was indebted to him $8000.00, and was about to fraudulently dispose of his property and hinder and delay his creditors; that Wolf executed an attachment bond in the sum of $16,000.00; that a writ of attachment was issued, commanding the sheriff of Moultrie county to attach the property of Landis; that the attachment writ, by order of Wolf, was given to said sheriff, and plaintiff ordered the sheriff to, and the sheriff did, on April 6, 1901, under said writ, take possession of all the said stock of dry goods, and other property involved in the said suit in the declaration upon which said injunction was in operation; that said levy was made under the direction of Wolf upon said property as the property of the defendant, Landis; that the sheriff retained the possession of all said property under said levy until after the termi-

nation of the said suit in chancery; that, upon a final hearing of said suit in chancery, the injunction was dissolved, but the dissolution was not obtained upon motion; and that all the expenses and solicitors fees in the declaration mentioned were incurred after the injunction became inoperative, and all of the damage to plaintiff's business as a merchant, if any was suffered by him, was suffered after the injunction became inoperative as aforesaid. By the additional seventh plea defendants say *actio non* as to all damages except one cent, because they say that on April 5, 1901, plaintiff, Wolf, sued out of the Clay county circuit court a writ of attachment in his favor against William Landis, and on April 6, 1901, in violation of the injunction mentioned in the declaration, caused the sheriff of Moultrie county to levy said attachment on said stock of merchandise described in plaintiff's declaration as the property of Landis, and by virtue thereof the sheriff held the merchandise in custody from said date till the termination of the chancery suit and the dissolution of the injunction upon a final hearing, whereby plaintiff caused the property to be held as the property of the defendant, Landis, and not to be subject to the use of the plaintiff in his said business as a merchant as alleged.

The bill in chancery filed by Landis against Wolf on March 25, 1901, was a bill for the specific performance of a contract, entered into on March 9, 1901, between Landis and Wolf, by which Landis agreed to sell his stock of merchandise, including all store fixtures, except boots and shoes, at net invoice price, to be invoiced between March 9 and March 23, and all goods sold after March 9 to be charged to Wolf at cost price, and he to receive the proceeds after the date when the sale was fully consummated. And Wolf bargained for the stock of goods, except boots and shoes, owned by Landis, and agreed to pay for them his equity in a farm of 166.14 acres in Clay county, Illinois, amounting to $5400.00, and $700.00 per-

sonal property, more or less, consisting of horses, cattle, hogs, farm implements, hay, corn, etc., and $800.00 due in twelve months, secured by a bankable note, the balance to be secured by a note signed by Wolf and his wife and a mortgage on the store fixtures, Wolf agreeing to pay $46.00 interest on the mortgage on the farm for the year ending March, 1902, and to pay the interest from that time until the mortgage fully matured.

The bill for specific performance sets up the contract, and alleges that the fixtures had not yet been invoiced, but when invoiced would amount to about $200.00; that they proceeded to invoice the stock of goods, and had done the greater part of it prior to Friday evening, March 22, when it became necessary for Landis, the complainant, to go to Cerro Gordo; that he left the stock of goods in care of his clerk with directions to deliver to Wolf, the defendant, one of the three keys to the store when he should bring to the clerk a deed to the land; that Landis went away and returned Monday, March 25, when he learned that Wolf had left with the clerk a quit-claim deed, purporting to be to 166.14 acres of land in Clay county, but that the deed did not properly describe the land; that Landis examined the deed and informed Wolf that he would not accept it. The bill also alleges Wolf did not furnish Landis an abstract of title, so that the latter did not know whether Wolf owned the land or not; that Landis informed Wolf he could not have the goods, until he complied with his agreement, and paid therefor. The bill charges that Wolf was fraudulently seeking to get possession of said goods without paying for them, and that he was an intruder and trespasser upon Landis' rights. The bill prayed that Wolf be compelled to account for the goods sold, and that he specifically perform the terms of his contract. The bill was answered by Wolf, admitting that Landis resided at Sullivan and owned a retail stock of merchandise, but denied that he was the owner thereof when he brought the suit. The

answer admits that the boots and shoes were the property of Landis, and also admits the execution of the contract on March 9. The answer alleges that Landis took possession of Wolf's farm, and leased the same, and took possession of the personal property on the farm, and sold and disposed of a part of the same. The answer charges that the defendant Wolf had complied with the terms of the contract; admits that Wolf was to pay Landis $800.00 in addition to the personal property, consisting of the farm, stock, etc., and to pay for the fixtures at the invoice price, by giving the note of himself and wife and chattel mortgage on the fixtures, as soon as the amount could be ascertained; that Landis accepted U. S. Wolf for the $800.00, and caused U. S. Wolf to enter into a written agreement to pay the $800.00, and thereby released defendant from the payment thereof. The answer admits that Wolf was to give Landis a mortgage on the fixtures for the invoice price thereof, and states that the invoice had not been completed when the suit was brought, and that he requested Landis to complete the same before bringing the suit; alleges that, when Landis left for Cerro Gordo, he gave his keys to his clerk, Foster, and told him that when Wolf brought the deed to him, Foster should deliver to Wolf the stock of goods, the keys, and all the money received since March 9. The answer states that Wolf delivered the deed to Foster, and Foster delivered to Wolf the keys and possession of the stock of goods; that he was in continuous possession of the same when the suit was brought; that he, Wolf, was at that time the owner of the stock; that the deed left with Foster was a quit-claim deed, and properly described the land; that he, Wolf, was ready to pay the balance of the purchase price, if any remained unpaid, as soon as the amount was ascertained.

Upon the trial of the present suit upon the injunction bond, the bill in the chancery suit, and the answer thereto, were introduced in evidence.

JOHN R. EDEN, J. K. MARTIN, and E. J. MILLER, for appellants.

W. K. WHITFIELD, and MILLS BROS., for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The damages, claimed by appellee in his declaration, are, first, those alleged to have accrued to appellee during the time the injunction remained in force, that is to say, about eight months, upon the alleged ground that appellee was prevented from merchandising, and making profit on the stock of dry goods in question, and from carrying on his business as a merchant; and second, fees of his solicitors and counsel in and about the dissolution of the injunction, alleged by appellee to have been incurred and paid by him.

*First*—It is claimed by appellants, that the court below erred in allowing appellee any damages for injury to his business, and loss of profits therein, while the injunction was in force. It is well settled that, in such cases, damages, which are remote, speculative and incapable of ascertainment cannot be allowed, but where, by the issuance of an injunction, a business is unavoidably suspended and thereby injured, damages may be allowed. It may not be possible to show by demonstration the precise extent of such damages, but profits for a reasonable period next preceding the time, when the injury was inflicted, may be taken as the measure of such damages, and as the basis of an estimate thereof, leaving the other party to show that, by depression in trade or other causes, they would have been less. (*Chapman* v. *Kirby,* 49 Ill. 211; *Green* v. *Williams,* 45 id. 206; *Gerard* v. *Gateau,* 15 Ill. App. 520).

In the case at bar, there was evidence, tending to show that the business of appellee was injured by reason of the issuance of the injunction. The final decree

of the court in the chancery proceeding for the specific performance of the contract dismissed the bill, and dis-. solved the injunction. The dismissal of the bill and the dissolution of the injunction were conclusive that the injunction was wrongfully sued out. (*Cummings* v. *Mugge*, 94 Ill. 186.) The only question, then, in the present case is as to the extent, to which the appellee was injured by reason of the issuance of the injunction. Upon this branch of the case, no error of law was committed by the trial court, of which the appellants can complain, because the propositions of law upon this subject submitted by the appellants to the court were held to be the law in the case. The trial court held "that, under the breach alleged in the declaration charging that plaintiff incurred damages to his business as a merchant, he is not entitled to recover anything for anticipated profits in carrying on his business." The court also held for the appellants another proposition of law to the following effect, to-wit: "that plaintiff cannot recover in this case for prospective gains and profits that might result from his business as a merchant, or other damage than that arising solely from the issue and service of the injunction writ, and its effect upon his business as a merchant."

*Second*—The evidence shows that, when the injunction in the chancery case was served upon the defendant therein, the present appellee, Wolf, he employed two attorneys to procure for him a dissolution of the injunction, and agreed to pay them $500.00,—$250.00 apiece. A motion was made to dissolve the injunction for want of equity appearing upon the face of the bill, but this motion was overruled by the court. The attorneys employed then proceeded to take testimony before the master, and a final hearing of the cause was had. The injunction was not dissolved until such final hearing, which resulted in the dismissal of the bill. This court has held in many cases that, where counsel fees are necessarily incurred in procuring the dissolution of an injunction, they may

be allowed as damages, but that, where the injunction is merely ancillary to the principal relief sought by the bill, and its dissolution is only incidental to the defense made, and the counsel fees are incurred in defending the suit generally, they cannot be assessed as damages. (*Walker* v. *Pritchard*, 135 Ill. 103; *Jevne & Almini* v. *Osgood*, 57 id. 340; *Elder* v. *Sabin*, 66 id. 126; *Alexander* v. *Colcord*, 85 id. 323; *Blair* v. *Reading*, 99 id. 600; *Milligan* v. *Nelson*, 188 id. 139.) In the latter case of *Milligan* v. *Nelson*, *supra*, we said: "It is well settled in this State that, on suggestions, damages will not be allowed for services rendered in the general defense of the suit, but only such as have been incurred for the purpose of getting rid of an injunction on a motion to dissolve, and not upon final hearing." In *Jevne* v. *Osgood*, *supra*, it was said: "It [the statute] was only intended to reimburse the defendant for moneys which he has paid, or for which he has become liable, on the motion to dissolve." In *Elder* v. *Sabin*, *supra*, it was said: "The statute only allows the assessment of damages sustained by reason of improperly suing out the injunction, and the damages must be confined alone to that ground. The charge for lawyer's fees could only extend to the motion to dissolve the injunction." In *Blair* v. *Reading*, *supra*, we said: "The propriety of suing out the injunction was never called up or considered by the court until the case was finally considered on its merits. Hence, the extra expense of a separate hearing of a motion to dissolve was not incurred."

In the case at bar, the cause came on for a final hearing after testimony was taken, and the report thereon had been made by the master to the court. Upon such final hearing, the court heard evidence, and considered the question, whether the complainant in the bill was entitled to a specific performance of the contract, or not. The main question involved in the case was, whether the defendant in the chancery suit had performed the contract for the purchase of the stock of goods, so as to be

entitled to their possession. The court held that the
complainant was not entitled to the relief prayed for,
and, in view of the issues made by the bill and answer,
must have held that the defendant had specifically per-
formed the contract. Incidentally to the determination
of the main question, whether or not there had been a
specific performance of the contract, the court upon the
final hearing dissolved the injunction. The services of
counsel were performed, not merely for the purpose of
securing a dissolution of the injunction, but in defense
of the suit upon the charges set up in the bill. Damages
cannot be assessed for services of counsel in thus making
a general defense of the suit. As was said in *Jevne* v.
*Osgood, supra*, "to give the statute such an unreasonable
construction would render it an instrument of great op-
pression."

In its rulings upon the evidence and upon the propo-
sitions of law submitted to it, the trial court ignored the
rule thus announced. It allowed, as damages, $500.00 as
counsel fees, which were earned, not merely in procuring
a dissolution of the injunction, but also in making a gen-
eral defense of the suit.

It is true that the testimony, introduced on behalf of
appellee, tended to show that his contract with his law-
yers was a contract to procure a dissolution of the in-
junction. But the mere fact, that it was called a contract
to procure a dissolution of the injunction, would not have
the effect of limiting the services of the attorneys to se-
curing that object, if, in fact, as the testimony shows,
such services were directed to a general defense of the
suit, as well as to a dissolution of the injunction. The
court refused to permit evidence to be introduced for the
purpose of showing how much of the services rendered
were necessary to procure a dissolution of the injunction,
and how much of such services were rendered in the gen-
eral defense of the suit. The court also refused to hold,
as the law in the decision of the case, propositions sub-

mitted to the court by the appellants below to the effect that appellee was not entitled to recover for fees paid, or contracted to be paid to his counsel in the chancery cause brought for a specific performance and injunction, if the services of said counsel were directed to a defense upon the merits of the bill, although including and involving a dissolution of the injunction. The court also refused to hold as law a proposition submitted by the appellants to the following effect: "The court holds the law to be that, when a claim for attorneys' fees is made, and the evidence does not disclose how much fees are incurred or paid on a motion to dissolve the injunction, but does disclose that $500.00 was paid upon a motion to dissolve and upon a final hearing together, then the plaintiff cannot recover for attorneys' fees." We are of the opinion that the court erred in this regard. Where the evidence makes no discrimination between services rendered in the case generally, and services which were strictly necessary to procure a dissolution of the injunction, there is no evidence upon which the assessment of damages can be based; and, therefore, the allowance of damages in such case cannot be sustained. (*Lambert* v. *Alcorn*, 144 Ill. 313.)

We concur in what is said by the Appellate Court in its opinion, deciding this case, as to the sustaining by the trial court of a demurrer to the amended sixth and seventh pleas. In such opinion it is said: "By these pleas it was sought to relieve appellants from all liability under the injunction bond, except nominal damages, because appellee began suit in attachment against Landis, and had the attachment writ levied upon the goods after the service of the injunction writ.  *  *  * The scope of the injunction writ was to restrain appellee from selling the goods under an asserted right by purchase. It had no reference to an enforcement of any right, which he might have had against Landis, as a creditor. He was by the injunction left free to exercise

by attachment, as creditor, any right, which any other creditor might exercise. The suing out of the attachment writ, therefore, was not in violation of the injunction. * * * The pleas present no bar to the recovery of damages."

For the error committed by the trial court in allowing counsel fees as part of the damages, the judgments of the Appellate and county courts are reversed, and the cause is remanded to the county court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*