## Thomas E. Thompson, Plaintiff in Error, v. Simon L. Marks, Defendant in Error.

### Gen. No. 19,107.

1. DAMAGES, § 191*—*when question of natural consequence of wrongful act is for jury.* In an action on the case against a firm engaged in the manufacture and sale of clothing for damages claimed to have resulted from false and fraudulent representations made by defendant to plaintiff and his copartner, that certain clothing was union made and that union labels attached thereto were genuine, the declaration alleged and was supported by proof upon the trial that the representations were made to induce plaintiff and his copartner to purchase the clothing, well knowing that they intended to resell the same to a third party and that the labels were counterfeit; that plaintiff relying upon the representations purchased and resold the same and was thereafter indicted for uttering and circulating a counterfeit label, whereby he suffered pain in body and mind, his credit and business injured, and he was obliged to spend $200 in supporting himself while imprisoned and in obtaining his release. *Held* that a direction of a verdict for defendant on the ground that the damages sought to be recovered were speculative and too remote was error; that the question whether the indictment was the natural consequence of defendant's wrongful act was for the jury.

2. APPEAL AND ERROR, § 438*—*when variance cannot be urged.* It cannot be urged that the trial court properly instructed the jury to find a verdict for defendant because of a variance between the declaration and plaintiff's case as made by certain written offers, where the alleged variance was not pointed out or objected to on the trial and there was an agreement between counsel to waive technical objections.

Error to the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed and remanded. Opinion filed April 23, 1914.

**Statement by the Court.** By this writ of error Thomas E. Thompson, plaintiff below, seeks to reverse a judgment against him for costs, rendered by the Circuit Court of Cook county on December 16, 1909. The judgment followed upon the verdict of a jury,

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

directed by the court, finding the defendant, Simon L. Marks, not guilty.

On June 4, 1901, said Thompson commenced an action in *case* against Harry M. Marks and Simon L. Marks, claiming damages in the sum of $25,000. Plaintiff's amended declaration, filed January 2, 1902, consisted of two counts. It is alleged in the first count, in substance, that on June 5, 1900, plaintiff and one Bruce Glover were copartners as retail dealers in clothing in the city of Quincy, Illinois; that on said day they agreed to purchase of the defendants certain clothing for $20 for the purpose of making resale of the same to a customer of theirs, named Fred A. Eberhardt; that defendants, as an inducement for said purchase, falsely and fraudulently represented to plaintiff and his said copartner that said clothing was made by members of the "Journeymen Tailors Union of America" (hereinafter referred to as the Union) and was "union-made," and that certain labels attached to said clothing were genuine labels of the Union and were lawfully upon said clothing; that plaintiff and his said copartner, because of and relying upon said representations, did then and there purchase said clothing of the defendants and paid the defendants therefor the said sum of $20; that at the time of said transaction the defendants well knew that plaintiff and his copartner purchased said clothing for resale in their business; that in truth and in fact the said clothing was not made by members of said Union but was made by nonunion laborers; that said Union had then adopted and was using a certain label for the purpose of designating and distinguishing clothing as having been made, produced and prepared by members of said Union, and had theretofore caused copies of said label to be filed with the Secretary of State of Illinois, in accordance with the statute in such case made and provided; that defendants in so selling said clothing did attach to the same, and did utter, counterfeits or imitations of said label of said Union, and did represent

to said plaintiff that said label so attached was the genuine label of said Union, well knowing that the same was in fact a counterfeit or imitation thereof, and that said clothing was in fact not made, produced or prepared by said Union or any member thereof; that thereafter the plaintiff and his said copartner, in the course of their said business as retail merchants of clothing, and "believing said labels to be the genuine labels of said Union," did sell said clothing so purchased as aforesaid to said Eberhardt, and did thereby utter and circulate said counterfeit or imitation of said label *apparently* contrary to the statute in such case made and provided, whereby plaintiff *to all appearances* incurred the penalties by statute in such case made and provided; that thereafter, because thereof, the grand jurors, chosen, selected and sworn in and for the county of Adams, State of Illinois (the same being the county where said city of Quincy is located and where said plaintiff and his copartner so sold and disposed of said clothing, on which said counterfeit labels were so attached), at the September term in the year 1900, did return an indictment against the plaintiff and his said copartner wherein and whereby they were charged with unlawfully, wilfully and knowingly selling goods, wares and merchandise, to which there was then and there attached and affixed an imitation of a certain genuine label of said Union, which said genuine label had been theretofore adopted and was being used by said Union; that afterwards, to wit, on the same date, at, etc., there was issued out of said court upon said indictment, directed to the sheriff of said Adams county, a writ of *capias* for the apprehension of said plaintiff and his copartner, which was delivered to said sheriff; that afterwards said sheriff arrested the plaintiff, by virtue of said writ, and detained plaintiff in his custody for the period of one day, and that afterwards, on May 20, 1901, the State's Attorney for said Adams county entered a *nolle pros.*, and there-

upon plaintiff was discharged. The said first count alleges in conclusion, in substance, that by means of the premises the plaintiff, while he was so imprisoned and indicted, "not only suffered great pain of body and mind, but was also greatly exposed in his credit and circumstances, and was hindered and prevented from performing and transacting his necessary duties and business" and was obliged to expend the sum of $200 in supporting himself while so imprisoned and in obtaining his release from said imprisonment, and that by means of the premises he has been greatly injured, etc.

The allegations of the second count, prior to the conclusion thereof, are substantially the same as in the first count, except that no mention is made of plaintiff's indictment, arrest or imprisonment, or the entering of a *nolle pros.* on said indictment by said State's Attorney of Adams county. The second count concludes, in substance, that by means of the committing of said grievances by said defendants the plaintiff "has been and is greatly injured in his good name, fame and credit, and brought into public scandal, infamy and disgrace, with and amongst all his neighbors and other good and worthy citizens," insomuch that many of them, to whom the innocence and integrity of plaintiff in the premises were unknown, have, on account of the committing of said grievances by the defendants, suspected and believed, and still do suspect and believe, that plaintiff is a person guilty of dishonest and fraudulent practices, and to have acted dishonestly in his said business as aforesaid; and that many of said neighbors and citizens have from thence hitherto "wholly refused and still do refuse to deal or have any transaction, acquaintance or discourse with plaintiff in his said business, or otherwise, as they were before used and accustomed to have, and otherwise would have had"; and that, by means of the premises, "members of labor and trade unions," in said city of Quincy, who respectively before the times of the com-

mitting of said grievances had been and were customers of and used to deal with plaintiff in his business, to the great profit and advantage of plaintiff, ''have from thence hitherto wholly neglected and refused, and still do neglect and refuse, to continue as such customers, or to deal with the plaintiff''; and that by means of the premises plaintiff has been greatly injured, etc.

On May 19, 1906, the death of one of the defendants, Harry M. Marks, was suggested. On the same day the demurrer of the defendant, Simon L. Marks, to said amended declaration was overruled and defendant was given ten days to plead. The plaintiff was also given leave to file an ''additional count'' to his declaration *instanter,* which additional count was filed, and to which defendant was given ten days to plead. Within the ten days the defendant filed a plea of the general issue to the entire declaration.

The allegations of said ''additional count,'' except the conclusion, are substantially the same as those contained in the first count of said amended declaration. The count, however, contains the additional allegation that on June 5, 1900, the said Harry M. Marks and Simon L. Marks were engaged in the city of Chicago in the manufacture and sale at wholesale of clothing, under the firm name of H. M. Marks & Co., and in the conclusion of this count plaintiff claimed injuries substantially as claimed in both of the two counts of said amended declaration.

It appears from the bill of exceptions, signed and sealed by the trial judge, that the cause came on for trial on December 15, 1909, before a jury, at which time the attorneys for both parties were present, and that after one witness on behalf of the plaintiff had answered a few questions, the trial judge and said attorneys retired ''into chambers where argument was had beyond the hearing of the jury—the jury being in the meantime excused until the following morning.'' It is stated by counsel for the plaintiff in his printed brief and argument here filed that at this time ''the court took the position that the damages sought were

speculative and too remote and that the case should
not go to the jury." It is apparent from the bill of
exceptions that after the court had reached this conclu-
sion, someone suggested that plaintiff's rights might
be preserved and a record made up for a reviewing
court by the presentation by plaintiff of written offers
as to what plaintiff would prove by his witnesses and
a ruling of the court thereon, and that this course of
procedure was agreed to by the court and by the at-
torneys for both parties. The bill of exceptions dis-
closes that on the morning of December 16, 1909, in the
presence of the court and jury, the attorney for plain-
tiff presented two written offers as to what he offered
to prove by the plaintiff and by a witness named Carl-
quist; that said two offers were read; that the court
"rejected" each and both of said offers to which rul-
ings plaintiff excepted; that the attorney for defendant
stated that he was willing that plaintiff should make
the offers, but that to both of them and every part
thereof he desired to object as being "incompetent,
irrelevant and immaterial, not within the issue of the
case, and not tending to prove the issues in the case,
*  *  *  and for the further reason that they are of-
fered for the purpose of tending to prove an issue for
the recovery of damages which are speculative and
remote, and which said plaintiff is not entitled to re-
cover under the issues in this case"; that thereupon
the attorney for plaintiff suggested that, to save any
possible question in the Appellate Court, the attorney
for the defendant ought to say that the form of the
testimony is not objected to; that thereupon the at-
torney for defendant stated that he was not objecting
to the testimony, as contained in said two offers, as to
form or as to it not being the best evidence; that there-
upon the trial judge stated that when the bill of ex-
ceptions is written up "it may contain a recital that
both counsel co-operated with the court in an endeavor
to have this case decided on its merits, in an expe-
ditious manner, and that no technical objections will
be made by either side in a court of review, except such

as effect the actual merits of the case, and that all questions relating to secondary evidence, or other technical objections to the form of evidence, are waived''; that to this statement of the court the attorneys for both plaintiff and defendant assented; that thereupon the court rejected all offers of evidence made by plaintiff ''on the ground that they do not tend to establish a cause of action,'' to which ruling plaintiff excepted; that thereupon the Court (addressing the jury) said: ''Since adjournment of yesterday, upon discussion of this case among counsel with the court, the court decided as a matter of law that the plaintiff has no case, no cause of action against the defendant, and therefore instructs the jury to find a verdict in favor of the defendant''; and that thereupon the jury returned a verdict finding the defendant not guilty, and plaintiff's motion for a new trial was overruled and plaintiff excepted, and the court entered judgment on the verdict and plaintiff excepted.

WILLIAM B. WARD and JOHN J. SONSTEBY, for plaintiff in error.

MAYER, MEYER, AUSTRIAN & PLATT, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In the year 1891 the General Assembly of this State passed an act entitled ''An Act to protect associations, unions of workingmen and persons in their labels, trade-marks and forms of advertising.'' That act was amended in some particulars in 1895, and as amended was in force in the year 1900. Sections 1 and 2 of said act as amended (J. & A. ¶¶ 11391, 11392) are in part as follows:

''1. Whenever any person or any association or union of workingmen has heretofore adopted or used,

or shall hereafter adopt or use any label, trade-mark, * * * or form of advertisement for the purpose of designating, making known or distinguishing any goods, * * * or other product of labor as having been made, manufactured, * * * or put on sale by such person or association or union of workingmen, or by a member or members of such association or union, it shall be unlawful to counterfeit or imitate such label, trade-mark, * * * or form of advertisement, or to use, sell, offer for sale, or in any way utter or circulate any counterfeit or imitation of any such labels, trade-mark, * * * or form of advertisement.

2. Whoever counterfeits or imitates any such label, trade-mark, * * * or form of advertisement, or sells, offers for sale or in any way utters or circulates any counterfeit or imitation of any such label, trade-mark, * * * or form of advertisement, or knowingly uses any such counterfeit or imitation, or knowingly sells or disposes of * * * any goods * * * or other product of labor to which any such counterfeit or imitation is attached or affixed, * * * shall be punished by a fine of not less than one hundred (100) dollars, nor more than two hundred (200) dollars, or by imprisonment for not less than three (3) months nor more than one (1) year, or by both such fine and imprisonment.''

It appears from the testimony offered by the plaintiff (presented by agreement in the form of written offers as above mentioned in the foregoing statement) that prior to the year 1900 the ''Journeymen Tailors' Union of America,'' a voluntary unincorporated association of thousands of experienced workmen in the United States and Canada, employed in making to order clothing for men, had adopted and registered a trade-mark or label, since which adoption and registration the members of the Union sewed said label into clothing made by members, and in said year said label became generally known and had a reputation in Illinois and elsewhere as evidencing dependable and sanitary clothing; that said Union permitted, by contract, the use of said label by certain manufacturers

of clothing, but that the firm of H. M. Marks & Co., manufacturers of clothing in Chicago and of which firm the defendant, Simon L. Marks, was a member, did not in said year have such a contract with said Union and was not entitled to use said label, and did not then or at any other time employ members of said Union; that plaintiff was in the retail clothing business at Quincy, Illinois, and in said year one Eberhardt ordered a coat from plaintiff to be made to measure, demanding that the same should be made by some member of said Union and that to such coat the label of said Union should be attached; that prior to this time the defendant had represented to plaintiff that he conducted a union shop, employed members of said Union and was authorized to use and did use said label furnished him by said Union; that plaintiff ordered said coat from the defendant informing the latter of the said demands by said Eberhardt and that shortly thereafter defendant delivered said coat to plaintiff, said coat bearing what purported to be the genuine label of said Union; that plaintiff sold said coat with said label attached to said Eberhardt, believing that said label was a genuine label, and said Eberhardt accepted said coat from plaintiff, paying the latter a price for the same in excess of the amount paid by plaintiff to defendant therefor; that shortly thereafter certain members of said Union, at Quincy, Illinois, pronounced said label a counterfeit, and said label was in fact not a genuine label of said Union, but was a counterfeit thereof; that at this time the city of Quincy had a population of about 36,000, and in said city there were then about forty local unions of various international trades unions, affiliated with the American Federation of Labor, with a membership of over 2,000 members; that information regarding the use or misuse or counterfeiting of union labels was conveyed to the members of the various unions and their friends and families; that said city was then known as a strong union town and a major portion of the skilled workmen in said

city were members of the various trades unions of
their respective trades; that plaintiff then had a large
number of customers among said skilled workmen; that
shortly after the delivery of said coat by plaintiff to
said Eberhardt and the discovery that said label on said
coat was a counterfeit, plaintiff was indicted by the
grand jury of Adams county, Illinois, being the same
county in which said city of Quincy is located, said in-
dictment being founded upon section 2 of the statute
above referred to; that plaintiff was taken into custody
by the sheriff, employed counsel, and that in the fol-
lowing year a *nolle pros.* was entered by the State's
Attorney of said county; that beginning with the time
of the delivery of said coat and the discovery that
said label was a counterfeit, the business of plaintiff
began to fall off, and large numbers of customers that
had theretofore traded with plaintiff ceased to do so,
by reason of the use of said counterfeit label so fur-
nished by defendant to plaintiff, and plaintiff's busi-
ness gradually decreased until it ceased to be profitable,
and plaintiff was compelled to and did close out his
business and was unable to pay his creditors in full;
that plaintiff sought employment but was unable to
make a living for himself and family; that shortly
thereafter his health began to fail and for five years
he was in ill health; and that during said time he came
to Chicago and consulted various physicians, submitted
to a surgical operation for stomach disorder, was
treated for nervous prostration, and was finally re-
stored to health.

The plaintiff claimed substantially in his declara-
tion, and maintained at the trial, that on account of the
foregoing facts he had been greatly injured and
damaged in that (1) while so indicted and imprisoned
he suffered great pain of body and mind, was greatly
exposed in his credit and circumstances, and was pre-
vented from transacting his business; and in that (2)
he suffered in his good name, fame and credit and was
brought into public scandal, infamy and disgrace

amongst his neighbors and fellow-citizens; and in that (3) he suffered a loss of customers and of profits in his business as a retail clothing merchant, failed, and was forced to retire from that business. At the trial the defendant contended, in substance, that said testimony did not tend to prove the issues as made by the pleadings, that the damages shown, if any, were speculative and too remote, and that plaintiff was not entitled to recover any sum as damages. The trial court agreed with this contention and ruled that the evidence offered by plaintiff "does not tend to establish a cause of action" and that "as a matter of law the plaintiff has no case," and instructed the jury to return a verdict finding the defendant not guilty, which they did, and judgment was entered upon the verdict. Counsel for plaintiff here contend that the court erred in so instructing the jury and in entering the judgment.

While we think that the alleged loss of customers and of profits in plaintiff's business was not shown or offered to be shown by plaintiff with sufficient certainty and definiteness (13 Cyc. 37, 49; *Landis v. Wolf*, 206 Ill. 392, 399; *Chapman v. Kirby*, 49 Ill. 211, 219; *Mugge v. Erkman*, 161 Ill. App. 180, 184), nevertheless we are of the opinion that the trial court erred in instructing the jury to find the defendant not guilty. The testimony disclosed that shortly after the delivery of the coat by defendant to plaintiff and its delivery in turn to Eberhardt by plaintiff, said coat bearing the counterfeit label which plaintiff believed to be genuine, it was discovered that said label was a counterfeit and plaintiff was indicted by the grand jurors of Adams county, arrested, taken into the custody of the sheriff, and in the following year a *nolle pros.* was entered. Prior to the time plaintiff ordered the coat of the defendant, the latter had falsely represented that he employed members of said Union in his shop and was entitled to use the genuine label of said Union, and when defendant delivered the coat to plaintiff, bearing the counterfeit label, he not only deceived plaintiff but

also committed an act declared unlawful by the statute, for which act he might suffer a fine or imprisonment or both.    The defendant knew that plaintiff had purchased said coat of him for the purpose of making a resale of the same to a third party.  Plaintiff resold the coat to Eberhardt and was indicted and taken into custody, charged with selling an article of merchandise bearing a counterfeit label.  By this indictment, arrest, etc., plaintiff was injured.  Was this the natural consequence of the wrongful act of the defendant?  We think that under the testimony presented by plaintiff this was a question for the jury to pass upon.   In *Chapman v. Kirby,* 49 Ill. 211, 218, it is said "Appellants having committed the wrong, must be held liable for all losses that flow from it.   And if the loss on these various articles was the necessary and proximate result of the act,—and of that the jury must judge from the evidence,—they must be held liable."   In 21 Encyc. of Law (2nd Ed.) page 509, it is said: "And the question whether from the act or omission complained of the likelihood of injurious consequences should reasonably have been foreseen is also for the jury."   See also *Galveston, H. & S. A. Ry. Co. v. Stovall,* 3 Tex. App. Civ. Cas. 307, 309; *Seckinger v. Philibert Mfg. Co.,* 129 Mo. 590, 603; 13 Cyc. 27; *Swain v. Schieffelin,* 134 N. Y. 471; *Seith v. Commonwealth Electric Co.,* 241 Ill. 252, 260; *Ford v. Hine Bros. Co.,* 237 Ill. 463.  And we think that, had the case been submitted to the jury and the jury had found that plaintiff's indictment, arrest, etc., was the consequence of defendant's wrongful act, there was sufficient evidence of damage to plaintiff to warrant a verdict in his favor for such an amount as would fairly compensate him for the injury so sustained.

Counsel for defendant here urge that the jury were properly instructed to find a verdict for the defendant, because there is a variance between the declaration and plaintiff's case as made in said written offers.  In view of the fact that this alleged variance was not

pointed out or objected to in the trial court, and in view of the agreement between counsel as to technical objections, etc., as above outlined in the statement of the case, the contention is without merit in this court.

The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*