I. T. S. RUBBER CO. v. TEE PEE RUBBER CO., Inc.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1924.)

No. 3961.

1. **Appeal and error ⬄1180(1)—Reversal of interlocutory injunction against infringement of patents and unfair competition held to dissolve injunction as to unfair competition.**

Where an interlocutory injunction restrained defendant from infringing plaintiff's patents and also from engaging in unfair competition, a decree of the Circuit Court of Appeals, reversing the order of the District Court granting the interlocutory injunction, vacated the injunction in so far as it restrained defendant from unfair competition, as well as that portion enjoining the infringement of plaintiff's patents, though the question of the propriety of restraining unfair competition was not raised nor considered nor decided by the court.

2. **Injunction ⬄239—Bond on injunction restraining infringement of patents and engaging in unfair competition construed as to damages recoverable.**

Where the court granted an interlocutory injunction restraining the defendant from infringement of plaintiff's patents and from unfair competition, a bond executed by plaintiff, conditioned on payment to defendant in the event of a dissolution of the injunction of all costs and damages which defendant shall have sustained by reason of the injunction, entitled defendant on dissolution of injunction to damages for any loss which it suffered by reason of the suspension of its business made necessary by the injunction, though the court had before it merely the question of the patent infringement.

3. **Injunction ⬄239—Bond conditioned on paying defendant's damages from suspension of business permitted defendant to keep organization intact and required it to reduce damages.**

Defendant during the period of the injunction had the right to keep its business organization intact so as to resume business in the event the injunction was dissolved, but was required to reduce the damages from the suspension of its business by keeping profitably employed.

4. **Injunction ⬄239—Damages sustained because of interlocutory injunction against engaging in its regular business recoverable on bond notwithstanding profit made in other business.**

The fact that defendant made a profit on the sale of other heels during the existence of the injunction did not absolve plaintiff from payment of damages on dissolution of injunction; but the profits so made are to be applied in reduction of damages.

5. **Injunction ⬄239—Promotion stock issued for services not expenses of business during period of injunction within terms of bond.**

The court's refusal to distribute the expense of promotion stock issued for services over a period of 20 years in ascertaining the expenses of the business during the period of the injunction *held* proper.

6. **Injunction ⬄239—Discount between sale price and par value of stock sold to dealers properly deducted as an expense in determining liability on injunction bond.**

The discount between the sale price and the par value of stock sold by defendant to dealers was not properly to be considered as an expense of conducting the business when estimating profits.

⬄For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Appeal and error ⟨key⟩1022(1)—Finding of master approved by District Court persuasive but not conclusive.**

Finding of special master on evidence taken orally before the master, approved by the District Court, though not conclusive on the Circuit Court of Appeals, is highly persuasive.

Appeal from the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by the I. T. S. Rubber Company against the Tee Pee Rubber Company. An interlocutory judgment was issued against defendant, and the plaintiff executed a bond conditioned on the payment of all costs and damages which the defendant should sustain by reason of the injunction. The injunction was dissolved and the bill dismissed, and, from a judgment for the defendant for the costs and damages sustained by reason of the injunction, the plaintiff appeals. Affirmed.

See, also, 288 Fed. 794; 268 Fed. 250.

F. O. Richey, of Cleveland, Ohio, for appellant.

C. P. Goepel, of New York City, for appellee.

Before DENISON and DONAHUE, Circuit Judges, and HICKENLOOPER, District Judge.

PER CURIAM. The Tee Pee Rubber Company started its business of merchandising rubber half-heels about the middle of October, 1919. On April 3, 1920, in a cause then pending before him involving the question of infringement of appellant's, patents for resilient heels by the appellee, the District Judge for the Northern District of Ohio, Eastern Division, issued an interlocutory injunction restraining the appellee from directly or indirectly making or causing to be made, using or causing to be used, or vending to others to be used, in any manner, the half-heels theretofore sold by appellee. The injunction also restrained the appellee from unfair competition in the sale of heels packed in cartons resembling those used by appellant. Bond in the sum of $10,000 was required of, and given by, the appellant, conditioned:

"That should such preliminary injunction be dissolved by the court during the pendency of this cause, and the said the I. T. S. Rubber Company pay all costs and damages which the plaintiff shall have proved itself to have sustained by reason of the issue of such preliminary injunction, * * * then the obligation shall be void, or else to remain in full force and virtue."

Upon the issue of this interlocutory injunction, the appellee appealed to this court, assigning in error only the questions pertaining to the issue of the injunction restraining alleged infringement of the letters patent in suit. The question of the propriety of issuing an injunction restraining unfair competition was not raised nor considered nor decided by the court. On July 15, 1920, this court filed its opinion holding that appellant's patents were not infringed by the appellee, and concluding that—

"The order, therefore, will be reversed, and the case remanded for further proceedings in accordance with this opinion."

On August 10, 1920, by agreement between counsel, the appellee resumed its business as if the injunction had been dissolved as to patent infringement, although the mandate did not issue from this court until December 17, 1920. This mandate was in the usual form, and concluded:

"* * * It is now here ordered, adjudged, and decreed by this court. that the order of the said District Court in this cause be and the same is hereby reversed with costs and the case remanded for further proceedings in accordance with the opinion of this court."

On July 9, 1921, final decree was entered by the District Judge, dismissing appellant's bill, and on the same day the court referred the case to a special master "to ascertain and report all costs and damages which the plaintiff has sustained by reason of the issuance of the preliminary injunction."

Numerous hearings were held before the special master and a large amount of evidence taken upon the question referred. In order to determine the profits lost and the damages suffered as a direct result of the issuance of the preliminary injunction, the business operations of the appellee were divided into three periods of 130 days each. The first period extended from November 25, 1919, to April 3, 1920; the second from April 3, 1920, to August 10, 1920; and the third from August 10, 1920, to December 17, 1920. The testimony was all directed toward ascertaining the profits, if any, made by the appellee during the 130-day period preceding the injunction and the 130-day period following the same, as an aid or guide in determining the amount of profits of which the appellee was deprived by reason of the injunction, and further directed toward ascertaining the expense incurred by appellee in keeping its business organization intact during the second or injunction period. The master reported that the appellee had sustained costs and damage by reason of the issuance of the temporary injunction in the sum of $7,500. Exceptions to the report of the special master were overruled, and judgment entered for appellee in said sum of $7,500. The appellant now brings this appeal to review this judgment.

[1] The first assignment of error presented to the court is that there has been no breach of the condition of the bond in that the preliminary injunction was never entirely dissolved, this court never having considered, and therefore never having reversed, the injunction against unfair competition. We are of the opinion that this contention of appellant cannot be sustained. While it is unquestionably so, that decrees and decisions of a court must be construed with reference to the issues they were meant to decide, and that upon a reversal the court is not to be considered as deciding questions not presented nor considered, yet it is quite clear that in this case the order of injunction was a single, unitary decree. As such, it was not separable into component parts. There were not two orders of injunction, but one order or decree enjoining two acts. Such was the decree brought before this court for review; and without deciding what might have been the situation had this court then decided to modify the injunction, rather than to reverse and vacate the decree, it is sufficient to hold that both

in its opinion and in the mandate the decree below was reversed and the cause remanded. This is not a modification of the injunction, but a vacating of the decree and a dissolution of the injunction. Courts can speak only through their records, and the record in this respect is unambiguous.

Counsel for appellant relies principally upon the case of Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060. This case is not applicable. The issue there was decided principally upon the ground that the court being empowered to fix the conditions upon which an order of injunction might issue, was authorized at any time thereafter to relieve the obligor from the burden of such condition. The concluding paragraph, which is specifically cited to the court, simply holds that even though the obligor in the undertaking could not be relieved of his obligation by the court, yet in that particular case the injunction had not been held to have been wrongfully issued, at least as far as the obligee plaintiff was concerned. As to the plaintiff in that case there had been no breach of the condition. In the instant case it was held that the injunction had been wrongfully issued as against the appellee. The cases are clearly distinguishable.

[2] We do not consider that the question of construction of the condition of the bond is raised, as would have been the case had the injunction simply been modified by this court, but it may be doubted that even in such event the appellant would be entitled to a strict construction contrary to the clear purpose of the undertaking. The court below had before it only the question of the traffic in such half-heels, which was the subject of the patent litigation, and the manifest intent of the parties and the court would seem to have been that the appellant should respond in damages for any loss which the appellee might suffer by reason of the suspension of its business in such half-heels. Certainly, if separate orders of injunction had issued and separate bonds been given, such would have been the result. And while the surety is often entitled to a strict construction of his obligation, it is our opinion that the principal obligor is entitled only to such construction as conforms to the intention of the parties, provided the language used will sustain such interpretation. We are quite clear in the opinion that such was the intention of the parties and that the language used would sustain this construction, as well as upon the point that the injunction has been dissolved.

[3, 4] The next contention which is principally urged by the appellant is that no profits were made either during the 130-day period prior to the injunction nor in the 130-day period following the dissolution of the injunction as of August 10, 1920, and that as to the injunction period the appellee's facilities were devoted to independent enterprises, viz., the sale of whole and "Pace-maker" heels, and that the losses sustained during that period are therefore not recoverable. Treating these questions in their inverse order, it is clear that while the appellee had the right to keep its business organization intact, so as to resume business in the event the injunction was thereafter dissolved, the appellee was likewise under obligation to reduce the damages from the suspension of its business by keeping profitably employed. To

this end salaries were reduced and the organization which had theretofore been employed only in the sale of half-heels was employed during the injunction period in the sale of whole and "Pace-maker" heels. A loss resulted from the combined conduct of this business and the maintenance of the organization, but a profit was made in the sale of whole and "Pace-maker" heels if considered separately. The appellant has been given the benefit of this profit in the reduction of damages for which appellant would have been liable had the organization been maintained in idleness. In allowing the losses actually so sustained, we are of the opinion that no error prejudicial to the appellant was committed.

Even the analysis of appellant's experts of the appellee's books shows that profits of $1,775.43 were made during the first period, a loss of $4,274.19 was sustained during the second period, and a profit of $4,497.38 was made during the third period, if certain items of apportionment over 20 years for promotion stock issued "for services" and of discount in the sales of capital stock to wholesalers and jobbers, called "missionary sales," be omitted from the accounting. And in this connection it may be observed that the period following the dissolution of the injunction offers perhaps a sounder indication of the profits which would have been made during the injunction period but for the unavoidable suspension of business. This is especially so in a young and growing business, unless it be of a seasonal nature—a question not raised here. The analyses of the officers and experts testifying for the appellee showed both larger profits for the first and third periods and larger losses for the second period. These analyses all omitted the items of promotion stock and "missionary sales" above mentioned, and the master ruled that "capital stock issued to jobbers and others to secure their active interest in the business is not regarded as an expense of the business but as a part of capital account," and wholly disregarded the claim of appellant that promotion stock issued to the officers of the company upon organization should be distributed through subsequent years as an expense of business.

[5] It therefore becomes necessary to consider these two items. Promotion stock issued to promoters and officers, "for services," does not seem to be a legitimate expense of conducting business. There is no evidence of a contract to render service for a definite period, over which the value of such stock should be distributed; nor is there any evidence that if any one of the donees of this stock had severed his connection with the enterprise he could not have retained the stock theretofore given him. If such stock be considered an expense of conducting the business, it was an expense then immediately incurred and paid. If distributable at all, it is distributable only over the period of organization, and would not enter into the calculation of profits or losses for any period now involved.

[6] As has been above stated, it was the custom of the appellee, during all the periods under consideration, to sell its treasury stock to wholesalers and jobbers at a discount of 20 cents on the dollar; in other words, a share of stock of the par value of $100 was sold to those who might influence the prosperity of the company at $80 per share.

This discount or difference between the sale price and the par value the appellant contends should be deducted as an expense of conducting business when estimating profits. In ruling adversely to this contention, we are of the opinion that the master and the court below committed no error. The appellee was entitled to the recovery of that sum of money which would have placed him in the same financial condition he would have been in if he had been allowed to proceed without interference. United States v. Smith, 94 U. S. 214, 24 L. Ed. 115; Landis v. Wolff, 206 Ill. 392, 69 N. E. 103. It is likewise apparent that neither the stock which the company has given away nor the price at which the company disposes of treasury stock is helpful in determining this pivotal question of the amount which the plaintiff was deprived of earning by reason of the injunction. This sum would seem to be most soundly and easily determined by estimating the probable profits which would have been made but for the interruption and the losses which were actually sustained in preserving the life of its organization. Had the transaction of business not been suspended, these expenses would have been absorbed in the gross receipts from the business, and the appellee would have thereby received reimbursement and, in addition thereto, his estimated profit. It would therefore seem almost elementary that such expenses and profits would constitute the measure of appellee's damage. See Central Coal & Coke Co. et al. v. Hartman, 111 Fed. 97, 49 C. C. A. 244 (C. C. A. 8).

The profits of which the appellee was deprived would be the probable gross income less the expense of conducting that portion of the business under inquiry. In the present case this profit would consist of the amount of gross sales, less the purchase price of the merchandise, the actual expense of merchandising, and overhead charges. How the company, as a company, spends such profits, whether with a view to future business or by declaring dividends, is not relevant to a determination of what profits would have been made but for the injunction. Neither the stock given to officers of the appellee, nor the discount in the cases of so-called "missionary sales" of stock, are expenses of conducting business in the sense here involved.

[7] We are of the opinion that the record discloses ample proof that profits were made during the first and third periods considered and that losses were sustained during the second period, in maintaining the life of appellee's organization, for which the appellant is liable, and that the finding of the special master that the cost and damage sustained by the appellee was $7,500, was a conservative estimate of such damages and justified by the evidence. While such determination is not conclusive, it is very persuasive (Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649), and this is especially so where the evidence is taken orally before a master and he has had an opportunity of personal contact with the witnesses and where his finding has been approved by the District Court. See, also, Davis v. Schwartz, 155 U. S. 631, 636, 15 Sup. Ct. 237, 39 L. Ed. 289, and Western Transit Co. v. Davidson S. S. Co., 212 Fed. 696, 701, 129 C. C. A. 232 (C. C. A. 6).

Other matters were argued, and though not discussed in the opinion they have all received careful consideration. We are of the opinion

that upon consideration of the whole record the findings of the master and the judgment of the court below result in substantial justice as between the parties, and that such judgment should therefore be affirmed. Judicial Code, § 269, as amended February 26, 1919 (chapter 48, 40 Stat. 1181 [Comp. St. Ann. Supp. 1919, § 1246]).